NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY
v. WILLIAMS.

[No. 11,508.    Filed April 5, 1923.    Rehearing denied June 26, 1923.    Transfer denied April 1, 1926.]

1.  EVIDENCE.—*Concessions or admissions made in effort to compromise are not admissible against the party making them; but rule is otherwise as to an independent fact admitted to be true but not constituting a point yielded in effort to compromise.*— An offer, concession or admission, made in the course of an ineffectual effort to compromise, and constituting, in itself, a

point yielded for the sake of peace, and not because it was just or true, is not competent evidence against the party making it; but the law is otherwise with regard to an independent fact admitted to be true, but not constituting such yielded point. p. 348.

2. INSURANCE.—*Evidence consisting of statements in insurer's letters written after insured's death relative to the cause of his death held to sustain finding that injury resulted from an accident.*—In an action on an accident policy wherein the plaintiff claimed that insured's death resulted from a fall on a bridge, statements in letters from the insurance company that it had positive proof that the injury sustained by the deceased by falling on the bridge was so slight that it was impossible for it to have caused his death, and that it did not prevent him from working, were sufficient to indicate an investigation and an admission of the fact of the fall, and to warrant the inference that the injury was received by falling on the bridge as claimed by the plaintiff.   p. 348.

3. APPEAL.—*Instruction as to copy of insurance policy sued on being attached to the complaint held not reversible error.*—In an action on an accident insurance policy, it was not reversible error to give an instruction to the effect that a copy of the policy sued on was attached to the complaint although no exact copy of the policy was attached to the amended complaint, where the original policy was read to the jury and the court had authorized an amendment by interlineation of the copy that was attached to the amended complaint.   p. 349.

4. APPEAL.—*Instruction held not erroneous because of the inadvertent use of the word "can" for "has," where the jury could not have misunderstood the meaning of the instruction.*— In an action on an accident insurance policy for the accidental death of the insured, an instruction that the burden was on the plaintiff to prove the material allegations of his complaint, "and, if this can be done," the burden was then on the defendant to prove the affirmative paragraphs of answer, was not reversible error because of the inadvertent use of the word "can" for "has" in the quoted part of the instruction, as the jury could not have understood therefrom that if it was barely possible to prove the material allegations of the complaint by a fair preponderance of the evidence, then the burden was on the defendant to establish the defenses pleaded in the answers. p. 351.

5. APPEAL.—*Admission in evidence of insurance policy sued on held not reversible error although an exact copy of the policy*

*was not made an exhibit to the amended complaint.*—In an action on an insurance policy, wherein an amended complaint had been filed, but the record did not affirmatively show that an exact copy of the policy was attached thereto, the admission of the policy in evidence was not reversible error, where the court had given leave to amend the amended complaint by interlineation of the copy so as to make it conform to the policy. p. 352.

6. PLEADING.—*Amendment of complaint after verdict held not reversible error where defendant knew what the amendment would be and waived right to have prior amendment.*—In an action on an accident insurance policy, the amendment of the complaint after verdict so as to show the true classification of the insured was not reversible error, where the defendant was fully informed of what the amendment would be and waived its right to have the amendment made before the introduction of the policy; if it desired to file additional answers or to have a continuance, it should have taken steps to do so at that time and not waited until after verdict. p. 353.

From Marion Circuit Court (33,156); *Harry O. Chamberlin,* Judge.

Action by John T. Williams against the National Life and Accident Insurance Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.* By the second division.

*John H. Rader* and *Felt & Forney,* for appellant.

*Bingham & Bingham, James Bingham* and *Remster A. Bingham,* for appellee.

McMAHAN, J.—Complaint by appellee on an accident insurance policy issued to Mart M. Williams, insuring him against loss of life resulting, directly and independently of all other causes, from bodily injury received accidentally through external and violent means.

The cause was tried on an amended complaint which, after alleging the issuance of the policy, alleged payment of all premiums by the insured; that on January 20, 1920, the insured accidentally fell upon and through a railroad bridge in such a manner as that he was injured

and that he died January 26, 1920, as the direct and exclusive result of such injury. It is also alleged that the insured had performed all the provisions on his part to be performed; that appellee was named a beneficiary in the policy; that proofs of death were furnished and that a copy of the policy was filed with the complaint.

Appellant answered in three paragraphs. The first was a general denial. The second alleged the insured died of a disease and not directly and exclusively from an accidental bodily injury. The third was, in substance, the same as the second, the only difference being that in this paragraph, the allegation that the insured died from disease is omitted and it is alleged that his death was not the direct result of the bodily injury alleged in the complaint. The issues being closed by a reply in general denial, there was a trial by jury which resulted in a verdict and judgment for appellee.

Appellant contends: (1) That the evidence wholly fails to prove that the death of the insured resulted from an accidental bodily injury, effected through external and violent means independently of all other causes; (2) that the verdict rests wholly upon speculation and inferences not warranted by the evidence.

The insured died January 26, 1920. January 30, 1920, appellee wrote a letter to appellant wherein he stated that he enclosed affidavits of himself, of Lizzie Williams, wife of the insured, and of Matilda Robbins, relative to the death of the insured. In this letter, appellee stated the insured had died from the effect of an accidental injury received in falling through a bridge. Appellant, on February 9, 1920, wrote a letter to appellee stating it had an affidavit that the insured was killed by falling through a bridge; that death proof and other forms were enclosed for appellee to have filled and executed and returned for adjustment of claims. On

June 10, appellee made proof of death. and furnished statements as called for in appellant's letter of February 9, and on June 22, 1920, appellant wrote a letter to appellee acknowledging receipt of the proofs of death but denying liability upon the ground that it appeared from the proofs that the death of the insured "was not the result of an accidental injury but was due to a disease." In a letter written by the general manager of appellant to appellee's attorneys on July 24, appellant said, "We have positive proof by the attending physician and others that the injury that claimant sustained on January 19th by falling on a bridge, was so slight that it was impossible for it to have caused this man's death. We also have positive proof of the fact that the injury did not prevent him from working."

None of the witnesses who testified at the trial was with the insured when he was injured, consequently there was no direct evidence as to how he was injured. He suffered an injury January 19. His widow testified that the insured had been sick—had complained of his injury, but did not quit work; complained of the injury from the time he received it until his death; he died Monday, January 26; called doctor day before he died on account of his injury; he left home about 6 o'clock in the morning for work and she received word of his death about an hour and a half later. She placed adhesive tape over the injured places in groin and hip. She saw the bruised places several times but did not consider them dangerous. He was foreman in the woods, but did not do any of the work himself. She was at home when he came home and began complaining of his hip and groin; he continued to complain of the injury from that time until his death, although he continued to work during the day from the time of his injury until his death.

Other witnesses testified that the insured was a strong, healthy man.   A witness who was present when he died, said he came to where the witness was and said, "Good morning," and complained of being sore from his fall and injury; they talked a short time, when the insured said "Let's go boys," witness turned around, took a couple steps and heard someone say "Catch him," and, on turning around, he saw the insured who was about eight feet away falling.   Never heard him speak again.   He did not live more than five minutes after he fell.

Several physicians testified as experts as to the cause of his death, and, from their evidence, the jury was justified in finding that his death was the result of the injuries which he received January 19.   There is no evidence of any other cause of death.   The insured was a strong, healthy, robust man, forty-six years of age, and had never been sick.

In further support of its contention that the verdict was not sustained by sufficient evidence, appellant calls attention to the fact that the insured was alone when injured and says that no eye witness testified that he received his injury accidentally. Appellee concedes that no witness who testified saw the insured when he was injured or testified as to how the injury was received.   He insists, however, that the letter of July 24, 1920, heretofore referred to and written by Mr. Thompson, appellant's general manager, to appellee's attorneys, wherein Mr. Thompson says, "We have positive proof by the attending physician and others that the injury that claimant sustained on January 19th, by falling on a bridge," etc., is sufficient to have authorized the jury in finding that appellant had made an investigation of its own and, from such investigation, learned that the insured was injured January

19, by falling on a bridge, and that such statement or admission as to when and how the injury occurred not being made in an attempt to settle or compromise the claim and not constituting a point yielded by appellant for the sake of peace, but being a statement of an independent fact, is sufficient to sustain the allegation that the insured suffered an accidental injury. It is a well-settled rule that, "an offer, concession or admission, made in the course of an ineffectual treaty of compromise, and constituting, in itself, the point yielded for the sake of peace, and not because it was just or true, is not competent evidence against the party making it; but the law is otherwise with regard to an independent fact admitted to be true, but not constituting such yielded point." *Kintz* v. *R. J. Menz Lumber Co.* (1911), 47 Ind. App. 475; *Louisville, etc., R. Co.* v. *Wright* (1888), 115 Ind. 378, 7 Am. St. 432. While none of the witnesses who testified were present when the insured was injured and did not undertake to tell how the injury took place, we are of the opinion that the statements in appellant's letters are sufficient to warrant the inference that appellant, from its own investigation, learned when and how the injury was received, and that it was received by falling on a bridge as claimed by appellee. There was evidence authorizing a finding that the insured was robust and healthy and had no disease of any kind, and that his death was due to his injury and not to any other cause.

Appellant next contends that the court erred in giving instruction No. 1, wherein the court stated the nature of the complaint, and that a copy of the policy was attached to the complaint. Appellant says the giving of this instruction constitutes reversible error because, as it contends, no copy of the policy was attached to or made a part of the amended

complaint upon which the cause was tried. The original complaint is not in the record. The record shows the filing of an amended complaint pursuant to an order of the court to make the complaint more specific. Attached to this amended complaint, as set out in the record, is a copy of the policy, wherein it is stated, among other things, that appellant insured the assured "in class C, as deputy sheriff." Without filing any demurrer to this complaint and without filing any motion to make it more specific, appellant filed answer as hereinbefore stated. In discussing this question, appellant says that a copy of the policy was attached to the complaint but omitting therefrom the words "in class C, deputy sheriff"; that, on its motion, appellee was required to and did file an amended and more specific complaint, but that the amended complaint was amended after verdict by attaching thereto an amended copy of the policy. The record shows that the amended complaint with the copy of the policy was filed March 15, 1921, notwithstanding the statement of appellant in its brief that the exhibit or copy of the policy was not on file when the answer was filed. When appellee offered to introduce the policy in evidence, appellant objected to its introduction for the reasons: (1) That when the amended complaint was filed, no exhibit was filed with the amended complaint and that the policy should not be introduced until leave to amend the complaint and to file the exhibit had been first obtained; (2) that the classification in which the insured worked had been omitted. Upon the court announcing that he would grant leave to amend, counsel for appellant announced that there was no use to delay the trial for that purpose, whereupon the judge said the amendment would be permitted, that the interlineation might be made later. The original policy was then read in evidence.

The bill of exceptions does not show to a certainty that there was no exhibit purporting to be a copy of the policy attached to the amended complaint when filed. The transcript shows an exhibit was filed with the amended complaint. The trial judge, when objection to the introduction of the policy in evidence was made, may have examined the complaint and found that a purported copy of the policy was filed; that the only difference between the exhibit and the original policy was that there was omitted from the exhibit the words, "in class C, deputy sheriff," as it appears permission was given appellee to amend and insert those words by an interlineation. But granting that there was no copy of the policy attached to the amended complaint, we do not think the giving of this instruction was reversible error. If, as a matter of fact, no copy of the policy was filed with and made a part of the amended complaint, this defect could have been reached by a demurrer or by a motion to make more specific.

Appellant also complains of the giving of instruction No. 2, wherein the court told the jury that: "Under the issues thus formed, the burden is upon the plaintiff to prove, by a fair preponderance of all the evidence, the material allegations of his complaint; and, if this *can* be done, then the burden is upon the defendant to show, by a fair preponderance of all the evidence" the material allegations of the affirmative paragraphs of answer. The court also, in this and in other instructions, clearly and correctly instructed the jury as to what was meant by a fair preponderance of the evidence, and that the burden was on appellee to prove that the death of the insured was brought about solely by reason of an accidental bodily injury and that if the same was brought about, in whole or in part, by disease, there could be no recovery. No objection is made to this instruction except to the phrase, "if this

can be done." Appellant contends that the court by this instruction gave the jury to understand that if it were barely possible for appellee to prove the material allegations of his complaint by a fair preponderance of the evidence the burden was on appellant to establish the allegations of the affirmative paragraphs of answer. It is quite clear that the court inadvertently used the word "can" for "has," but, taking the instructions as a whole, there was no reversible error in the giving of this particular instruction.

Instruction No. 10, to the giving of which appellant objects, relates to the evidence of certain physicians based upon hypothetical questions. No objection is made to the form of this instruction. The objection is that there was no evidence on which to base the instruction. In this, however, appellant is clearly mistaken. The evidence was sufficient not only to justify but to require an instruction on this question and there was no error in giving this instruction.

Appellant complains of the action of the court in permitting the policy to be introduced in evidence on the ground that no copy of the same was made an 5. exhibit to the amended complaint. A number of authorities are cited in support of this contention, but they are all cases relating to the effect of the failure to make a written instrument, or a copy thereof, a part of the complaint, as a matter of pleading. As heretofore stated, when appellee offered to introduce the policy in evidence, a question arose as to whether a copy of the same had been made a part of the complaint. The record does not conclusively show that no copy of what purported to be a copy of the policy was attached to the amended complaint. The record before us shows that a copy of the policy was actually made a part of the complaint when it was filed. If the record does not speak the truth in relation to this matter, appellant

should have taken steps to have had it corrected so that it would speak the exact truth. When the policy was offered in evidence, the court announced that appellee would be given leave to amend his complaint and appellant, without insisting that the amendment then be made, in effect, at least, agreed that the policy might be introduced without waiting for the amendment to be actually made. Under the condition of the record, there was no reversible error in the introduction of the policy in evidence.

There is no merit in the contention that the court erred in refusing to strike out certain parts of the depositions of Lizzie Williams and William Fields, or in overruling objection to question asked appellee as to the result of his investigation to learn if all premiums had been paid on the policy.

The next contention is that the amount of the recovery is excessive and that the court erred in permitting the amended complaint to be amended after verdict.

6. dict. We have heretofore had cause to refer to the amendment of this complaint and what was said and done in relation thereto during the trial when the policy was introduced in evidence. Appellant says that it relied upon the failure of appellee to have a copy of the policy made a part of the amended complaint as an excuse for not filing an additional paragraph of answer, and that, under evidence showing the insured had changed his occupation from deputy sheriff to foreman in the woods, the amount of insurance was reduced from $500 to $300, so that, under the evidence, the amount of recovery, if appellee was entitled to recover anything, was at least $200 in excess of what it should have been. A sufficient answer to these contentions is that, when the policy was offered to be introduced in evidence and objection was made thereto, appellee was given leave

Baltimore, etc., R. Co. *v.* Hill, Admr.—84 Ind. App. 354.

to amend his complaint, and appellant, with knowledge of what the amendment would be, agreed that the same might be made later. The policy was then read in evidence and appellant was then fully informed as to what the amendment would be and also as to the contents of the policy introduced in evidence. If it desired to file any additional answer, or if it desired any delay or continuance, it should have taken such steps as it thought necessary at that time and not have waited until after verdict.

Judgment affirmed.