Michael HAHN and Judith Hahn,
Appellants (Plaintiffs below),

v.

FORD MOTOR COMPANY, INC., and
Dick Lorey Ford, Inc., Appellees
(Defendants below).

No. 2–1280A419.

Court of Appeals of Indiana,
Second District.

May 12, 1982.

Rehearing Denied July 1, 1982.

George Clyde Gray, Robert Koor, Douglas N. Ryan, Indianapolis, for appellants.

Busby, Austin, Cooper & Farr by Stephen R. Hardacre and Michael D. Austin, Anderson, Phillip E. Stephenson, Browne, Torrance, Spitzer, Herriman, Browne & Stephenson, Marion, for appellees.

SHIELDS, Judge.

Appellants Michael and Judith Hahn initiated an action against Ford Motor Company (Ford) and Dick Lorey Ford, Inc. (Lorey) for breach of warranties on a 1977 Ford LTD II. Lorey counterclaimed for the balance due on the purchase price of the vehicle. At trial the jury rendered a verdict in favor of Ford and Lorey and against the Hahns on the breach of warranties action; the jury also held in favor of Lorey on its counterclaim, awarding damages of two thousand nine hundred dollars ($2,900). The Hahns present the following issues on appeal:

1) Did the trial court err in admitting the Ford warranty facts booklet into evidence?

2) Did the trial court err in admitting Lorey's warranty disclaimer into evidence?

3) Did the trial court err in granting a judgment on the evidence in favor of Ford on the issue of punitive damages?

4) Did the trial court err in refusing to give Hahns' tendered instruction number 16?

5) Did the trial court err in failing to allow Hahns as counter defendants to assert rejection or revocation as a defense to Lorey's counterclaim for the balance due on the vehicle?

We affirm.

On June 27, 1977 Michael Hahn went to the Dick Lorey Ford dealership in Muncie to inquire about purchasing a new car. Hahn had observed advertisements on television and in magazines in which general statements were made concerning the quality of Ford cars. He indicated to the salesman he was interested in an auto which would be durable enough to haul a camper-trailer on family vacations. The next day Hahn, accompanied by his wife Judith, returned to the dealership and test-drove a 1977 Ford LTD II. On June 29 the Hahns once again returned to the agency and expressed a desire to purchase the same LTD II they had driven the previous day. That same date Michael Hahn executed a purchase agreement with Lorey and signed a dealers warranty disclaimer entitled "As Is Manufacturers Warranty Only." He and Mrs. Hahn executed a Merchants National Bank of Muncie retail installment sales agreement. The dealers warranty disclaimer represents dealer Lorey's attempt to disclaim all warranties, express and implied. It limits purchasers to recourse against the manufacturer and does not purport to affect warranties that may be provided by Ford.

The Hahns took delivery of the vehicle July 1, 1977. When Mr. Hahn arrived home with the new car he found a Ford warranty facts booklet in the glove box. According to Hahn, this was the first opportunity he had to read the pamphlet. He further claims the contents of the booklet were not discussed prior to the consummation of the sale.

Shortly after the date of purchase the Hahns began to experience persistent difficulties with the vehicle. According to service orders contained in the record, the car was taken to the dealership for repairs on numerous occasions. The Hahns also claim there were additional instances when the car was taken to the dealer and no formal service order prepared.

The most frequently reported defects included persistent oil and transmission leaks, difficulties with the electrical and heating systems, and a defective cruise control. Many of the problems ensued after the period of 12,000 mile and/or 12 months. However, Ford made repairs at no cost to purchaser even though this is not necessarily the company's policy.

On January 20, 1979, nearly 18 months after the date of purchase, the Hahns attempted to permanently return the car to the dealership. The tender was refused by Lorey. When proceedings were initiated in April 1979 the Hahns placed the vehicle in storage alleging continual problems with the electrical system prevented the car from starting.

## I

The Hahns contend the trial court erred when it admitted in evidence the Ford warranty facts booklet which limited the duration of implied warranties and disclaimed liability for incidental and consequential damages. They argue the booklet was inadmissible as a matter of law because the modification of implied warranties and the limitation of remedy were (A) inconspicuous, (B) not part of the bargain, (C) unconscionable, and (D) in violation of the Federal Magnuson-Moss Warranty Act.

## A

Mr. Hahn claims to have found the booklet in the car's glove box after he had taken delivery of the vehicle and driven it home. The pertinent language of the booklet reads:

"ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS IS LIMITED TO THE 12–MONTH/12,000 MILE DURATION OF THIS WRITTEN WARRANTY.

"TO THE EXTENT ALLOWED BY LAW, NEITHER FORD NOR THE SELLING DEALER SHALL HAVE ANY RESPONSIBILITY FOR LOSS OF USE OF THE VEHICLE, LOSS OF TIME, INCONVENIENCE, COMMERCIAL LOSS OR CONSEQUENTIAL DAMAGES.

"Some states do not allow limitations on how long an implied warranty lasts or the exclusion or limitation of incidental or consequential damages, so the above limitations may not apply to you.

"This warranty gives you specific legal rights, and you also may have other rights which vary from state to state."

The Hahns contend the modification of implied warranties and limitation of remedy contained in Ford's warranty facts manual were inconspicuous as a matter of law and should have been excluded from the jury.

I.C. 26–1–2–316(2) (Burns Code Ed.)[1] provides any attempt to exclude or modify an implied warranty of merchantability must mention merchantability and, *if written*, must be conspicuous, while any limitation of the implied warranty of fitness must be in writing *and* conspicuous. The term "conspicuous" is defined at I.C. 26–1–1–201(10) (Burns Code Ed.):

"Conspicuous: A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON–exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.' "

---

1. Section 26–1–2–316(2) provides:

"2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the

NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. But in a telegram any stated term is 'conspicuous'. Whether a term or clause is 'conspicuous' or not is for decision by the court."

■ The purpose behind the conspicuousness requirement is to protect the buyer from unfair surprise. In the present case the language modifying the implied warranties of merchantability and fitness is printed in bold face type on the front page of the booklet. It is sufficiently conspicuous so that a reasonable person ought to be placed on notice as to the terms of modification. We thus conclude that, as a matter of law, the modification of warranties complied with the requirements of I.C. 26–1–1–201(10) and I.C. 26–1–2–316(2).[2]

### B

The Hahns further note the modification of implied warranties and limitation of remedy contained in the Ford warranty facts booklet were given to them subsequent to the execution of the sales contract. They argue the pamphlet was therefore inadmissible as a matter of law because it was not part of the bargain.

■ The U.C.C. is silent as to when disclaimers, modifications, and limitations must be made. However, modification of warranties and limitation of remedies are not favored in Indiana and are strictly construed against the seller and manufacturer on the basis of public policy. *Auto-Teria Inc. v. Ahern*, (1976) 170 Ind.App. 84, 352 N.E.2d 774. As professors Pratter and Townsend noted, "The burden is put on the seller to disclose to the buyer what is being done." H. Pratter and R. Townsend, Indiana Comments to I.C. 36–1–2–316 (Burns Code Ed.), commentary at 60. Therefore, in instances where seller does not attempt a modification of warranty or limitation of remedy until after the contract for sale has

been made even properly worded limitations or exclusions are ineffective. *Karczewski v. Ford Motor Co.*, (1974 N.D.Ind.) 382 F.Supp. 1346, aff'd. 515 F.2d 511; *Auto-Teria; Scientific Application, Inc. v. Delkamp*, (1981) N.D., 303 N.W.2d 71; *Hartwig Farms v. Pacific Gamble Robinson*, (1981) 28 Wash.App. 539, 625 P.2d 171; *McNamera Pontiac, Inc. v. Sanchez*, (1980) Fla.App., 388 So.2d 620; *Willoughby v. Ciba Geisy Corp.*, (1980) Tex.Civ.App., 601 S.W.2d 385; *Taterka v. Ford Motor Company*, (1978) 86 Wis.2d 140, 271 N.W.2d 653; *Whitaker v. Farmhand, Inc.*, (1977) 173 Mont. 345, 567 P.2d 916; *Rehurek v. Chrysler Credit Corporation*, (1972) Fla., 262 So.2d 452; *Dougall v. Brown Bay Boat Works and Sales, Inc.*, (1970) 287 Minn. 290, 178 N.W.2d 217. A modification of warranty or limitation of remedy contained in a manufacturers manual received by purchaser subsequent to sale has not been bargained for and thus does not limit recovery for implied or express warranties which arose prior to sale. In essence, the parties have not consented to and are not contractually bound by the modification or limitation.

Thus, it is evident, in the absence of sufficient evidence permitting an inference the parties assented to the terms of the warranty facts booklet, the modification and limitations contained therein are ineffective as a matter of law. The specific argument advanced by the Hahns, however, alleges the booklet was inadmissible on evidentiary grounds because its relevance depended upon the existence of another conditioning fact—that it was part of the parties' contract. This is quite a distinct argument than one which overtly attacks the effectiveness of a warranty limitation on sufficiency grounds, i.e., whether the evidence is sufficient to sustain an inference the parties consented to the terms of a warranty modification and limitation. We are, of course, limited in our scope of review and address only those issues properly raised by the parties.

---

**2.** I.C. 26–1–2–719 (Burns Code Ed.) permits a contractual modification or limitation of remedies. This section, however, does not require the seller or manufacturer to conspicuously state such limitations. Therefore, Ford's limitation on remedy may not fail for want of conspicuousness.

We disagree with Hahns' contention concerning the relevancy of the booklet. In situations such as the present the role of the trial judge is *not* to permit the Hahns to raise a preliminary dispute as to the existence of the conditioning fact, but merely to require Ford to bring forward evidence from which the ultimate fact finder could find the existence of the conditioning fact. *McCormick, Handbook of the Law of Evidence* § 53 (2nd. ed. 1972).

In the instant case, as we have noted, the Ford warranty manual contained both a modification on the duration of implied warranties and a limitation of remedy. We acknowledge the evidence clearly reveals Hahn was not aware of, and therefore never assented to, the limitation of remedy contained in the pamphlet. His attention was not directed to the specific limitations, nor was he afforded a reasonable opportunity to read the booklet. However, the trial court removed the issue of whether there was a valid limitation of remedy from the jury when it instructed the jury as to the standards to be used in measuring damages.[3] These instructions charged the jury they were to consider the full panoply of damages available to a buyer in an action for breach of warranty.

Therefore the lone question presented is whether there was evidence from which the trial court could conclude Ford made a prima facie showing Mr. Hahn assented to the limitation on the duration of implied warranties. Mr. Hahn, of course, testified he did not become aware of the warranty

booklet until after he drove the new car home and searched the glove box. On the other hand, there is evidence which reveals Mr. Hahn was cognizant of a 12,000 mile/12 month limitation on the duration of any implied warranties. He testified:

"Q. Okay. What, what does the term warranty mean to you?

A. The term warranty to me means I believe, that anything that goes wrong within a certain period of time, other than wrecking the car, or something like this, that they say they are going to stand behind and that they will fix [sic] for you.

Q. Okay. Did you discuss anytime [sic] the duration of the warranty on the seventy-seven Ford that you were planning to buy?

A. I don't believe it was discussed.

Q. Okay. So you're testifying in Court today that you proceeded to buy a car without any information whatsoever of the kind of warranty, the length of warranty of [sic] the things the warranty covered?

A. *Well the basic warranty on a car is twelve years, I mean twelve months or twelve thousand miles. I think everybody is aware of that.*"

(emphasis supplied)

\* \* \* \* \* \*

"Q. And I think you also testified that you knew there was a one year, twelve thousand mile, some type of warranty, at least in effect on the car, is that correct?

---

3. The limitation of remedy was not an issue because the jury was instructed:

"If you find that plaintiffs are entitled to recover from one or both defendants then you may consider the following statutes regarding damages:

. . . . .

"26–1–2–715 Buyer's incidental and consequential damages—Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commisions [sic] in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

"(2) Consequential damages resulting from the seller's breach include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise."

The jury was further instructed:

"Compensatory damages are those damages which reasonably compensate or 'make whole' an injured party for losses sustained. Such damages seek to place the injured party in as good a condition as if the other party had fully performed its legal obligation."

A. Yes, sir.

Q. And you were aware that that was also from Ford Motor Company?

A. Yes sir."

In addition, there was testimony the Lorey salesman discussed an extended warranty option program with Mr. Hahn. It was not specifically disclosed whether in the course of such conversation he was informed as to the 12,000 mile/12 month limitation on the duration of the standard warranty plan. The trial court, however, could have reasonably inferred such a discussion would, of necessity, entail an explanation of the duration of the basic warranty program in order to illustrate the benefits provided by the extended warranty option.

We thus hold there was evidence from which the trial court could conclude Ford made a prima facie showing the limitation on duration of implied warranties contained in the Ford warranty facts booklet was within the Hahns' knowledge at the time the parties entered into the bargain. The trial court therefore did not err in admitting into evidence the booklet which contained an identical limitation.[4]

### C

The Hahns next argue the modification of warranties and limitation of remedy were unconscionable as a matter of law and should have been excluded from the jury's consideration.

Pre-code Indiana cases recognized a clause or contract could be declared void on the basis of unconscionability.

4. The Hahns also assert Mrs. Hahn was a party to the sale and that the booklet was not part of the contract as to her. (Mrs. Hahn was required to execute and thereby become liable on the retail installment sales agreement and the vehicle is jointly titled.) Unlike Mr. Hahn, Mrs. Hahn did not have the opportunity to read or execute the dealer disclaimer or purchase agreement. This contention, however, is without merit. Mr. Hahn alone negotiated the transaction and signed the purchase order contract. Moreover, the Hahns fail to present a cogent argument with supporting authority to bolster their claim.

5. I.C. 26–1–2–302 provides:

"An unconscionable contract has been defined to be such as no reasonable man not under delusion, duress or distress would make, and such as no honest and fair man would accept. There exists here an inequality so strong, gross, and manifest that it is impossible to state it to a man of common sense without producing an exclamation at the inequality of it."

*Franklin Fire Insurance Co. v. Noll,* (1945) 115 Ind.App. 289, 58 N.E.2d 947, 949. There are few Indiana cases explicitly applying I.C. 26–1–2–302 (Burns Code Ed.), the Code section governing unconscionability.[5] *See Van Bibber v. Norris,* (1981) Ind., 419 N.E.2d 115 (acceleration and repossession clause of installment sales contract for mobile home held not unconscionable); *Weaver v. American Oil Co.,* (1972) 257 Ind. 458, 276 N.E.2d 144 (application of 2–302 by analogy to an indemnity contract). According to Uniform Commercial Code § 2–302, official comment 1:

"The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract ... the principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz,* 172 F.2d 80, 3d Cir. 1948) and not of disturbance of allocation of risks because of superior bargaining power."

"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."

The two evils addressed in I.C. 26–1–2–302, "oppression" and "unfair surprise," suggest a framework for analysis heretofore not applied in this state but endorsed elsewhere. *Tacoma Boatbuilding Co., Inc. v. Pelta Fishing Co., Inc.*, (1980 W.D.Wash.) 28 U.C.C.Rep. 26. This analysis concentrates upon the two branches of unconscionability: substantive and procedural. Substantive unconscionability refers to oppressively one-sided and harsh terms of a contract, while procedural unconscionability involves the manner and process by which the terms become part of the contract.

Substantive unconscionability generally involves cases where courts have determined the price unduly excessive or where the terms of the contract unduly limit debtor remedies. *White and Summers, Handbook of the Law Under the Uniform Commercial Code* § 4–4 (2nd ed. 1980). Procedural unconscionability most frequently arises in cases characterized by consumer ignorance. For example, in one oft-cited case where a buyer who had a poor command of the English language signed a sales contract which waived implied warranties the court held the disclaimer invalid even though it otherwise complies with the code. *Jefferson Credit Corp. v. Marcano*, (1969 Civ.Ct.) 60 Misc.2d 138, 302 N.Y.S.2d 390. Procedural unconscionability may also be found where "[s]eller's guile . . . takes

the form of a clause difficult to understand and placed in fine print on the rear of the contract." *White and Summers* § 4–3, at 154.

Section 26–1–2–302(1) assigns the question of unconscionability exclusively to the court. The party raising the issue bears the burden of proof. The Hahns must, therefore, establish as a matter of law the unconscionability of the modification of warranties and limitation of remedy.

Several commentators and cases have suggested that the terms of the modification of warranties and limitation of remedy are to be tested only against the precepts of I.C. 26–1–2–316 and 26–1–2–719[6] respectively. *F.M.C. Finance Corp. v. Murphree*, (1980 5th Cir.) 632 F.2d 413. They argue if the modification or limitation in question complies with section 2–316 or 2–719 it may not as a matter of law be deemed unconscionable unless there are procedural irregularities.[7] *Tacoma Boatbuilding; Special Project, Article Two Warranties in Commercial Transactions*, 64 Cornell L.Rev. 30. There is admittedly some merit to this argument, especially with regard to I.C. 26–1–2–316 which has as its purpose the prevention of unfair surprise and oppression. Uniform Commercial Code § 2–316, official comment 1. Yet, section 26–1–2–302 expressly applies to "any clause of the contract," and neither section 2–316 nor 2–719

**6.** Section 26–1–2–719 provides:

"(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

"(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

"(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

**7.** According to this view, the only occasion in which a modification of warranties or limitation of remedy would be held substantively unconscionable is when it limits the consequential damages and runs afoul of I.C. 26–1–2–719(3). We note that cases finding warranty disclaimers or modifications unconscionable frequently flow from a misapplication of section 2–719(3). This is the result of a misunderstanding of the differences between a warranty disclaimer or modification subject to section 2–316 and a limitation of remedies subject to section 2–719. *See F.M.C. Finance Corp. v. Murphree*, (1980 5th Cir.) 632 F.2d 413, 420.

affirmatively states that limitations meeting its requirements are immune from section 2–302. *F.M.C. Finance Corp.*, 632 F.2d at 420.

■ We are mindful, however, that parties to a contract are provided broad latitude within which to fashion their own liability and remedies. *Industralease Automated and Scientific Equipment Corp. v. R.M.E. Enterprises Inc.*, (1977) 58 App. Div.2d 482, 396 N.Y.S.2d 427. Modification of warranties and limitations of remedy are not *per se* unconscionable. *Laudisio v. Amoco Oil Co.*, (1981 Sup.Ct.), 108 Misc.2d 245, 437 N.Y.S.2d 502. In the present case the terms of the Ford modification of warranties and limitation of remedy are not so one-sided as to be unconscionable as a matter of law.

### D

The Hahns also allege the Ford warranty facts booklet violates the Federal Magnuson-Moss Warranty Act. 15 U.S.C. § 2301 *et seq.*

In 1975 Congress enacted the Magnuson-Moss Act which establishes a Federal consumer warranty law. Section 2301 of the Act defines consumer goods to include "tangible personal property . . . distributed in commerce . . . [and] normally used for personal, family or household purposes . . . ." The Act provides the types and methods of disclaimer and modification one may employ with regard to implied warranties. It applies exclusively to disclaimers and modifications contained in written warranties. The statute relies, however, on state law in defining the contours of implied warranties. *Mendelson v. General Motors Corp.*, (1980 Sup.Ct.) 105 Misc.2d 346, 432 N.Y.S.2d 132.

According to the Hahns, the Ford warranty booklet violates 15 U.S.C. § 2308 because it limits the damages available to purchasers upon a breach of implied warranty.[8] Section 2308 provides:

"(a) No supplier may disclaim or modify (except as provided in subsection (b) of this section) any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.

(b) For purposes of this chapter (other than section 2304(a)(2) of this title), implied warranties may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty.

(c) A disclaimer, modification, or limitation made in violation of this section shall be ineffective for purposes of this chapter and State law. Pub.L. 93–367, Title I, Sec. 108, Jan. 4, 1975, 88 Stat. 2189."

Ford's attempt to limit its liability for a breach of implied warranty, the Hahns contend, contravenes § 2308(a) and (b) which provides that warrantor may not limit an implied warranty except to the extent its duration is limited to the reasonable duration of the written warranty.

■ The Hahns' analysis, however, fails to adequately differentiate between a limitation of remedy and a disclaimer or modification of warranty. Although it is frequently difficult to appreciate the distinction between warranty disclaimers or modifications and limitations of remedy, these two devices in theory constitute two separate mechanisms for eliminating responsibility for product quality. A disclaimer or modification of warranty eliminates the quality commitment. It limits the circumstances in which the seller or manufacturer may be deemed to be in breach of warranty. A limitation of remedy, on the other hand,

---

**8.** The booklet provides:

"*TO THE EXTENT ALLOWED BY LAW*, NEITHER FORD NOR THE SELLING DEALER SHALL HAVE ANY RESPONSIBILITY FOR LOSS OF USE OF THE VEHICLE, LOSS OF TIME, INCONVENIENCE, COMMERCIAL LOSS OR CONSEQUENTIAL DAMAGES. (emphasis supplied)"

acknowledges the quality commitment but restricts the remedy available once a breach has been established. *Gladden v. Cadillac Motor Car Division*, (1980) 83 N.J. 320, 416 A.2d 394.

■ The Magnuson-Moss Act provision cited above provides the warrantor may not "disclaim or modify . . . any implied warranty" except to the extent its duration is limited to that of the written warranty. It does not make reference to any attempt to limit or restrict available remedies for breach of an implied warranty. There is no indication the Act even contemplates limiting the ability of the warrantor to limit relief.[9] In the present case Ford limited the duration of any implied warranty to the duration of its written express warranty. The fact it restricted available relief for a breach of implied warranty did not violate the terms of section 2308.

For the aforementioned reasons, we thus conclude Hahn's claim that Ford's modification of warranties and limitation of remedy were inadmissible as a matter of law is without merit.

## II

The Hahns similarly contend Dick Lorey Ford Inc.'s disclaimer of warranty was inadmissible as a matter of law. They rely on many of the same arguments advanced with regard to Ford's warranty booklet to support this contention. The Lorey disclaimer is entitled "As Is, Manufacturers Warranty Only."[10] It represents dealer Lorey's attempt to disclaim all warranties, express and implied, and limit buyer to

recourse against the manufacturer, Ford Motor Co.

As we noted earlier, the pertinent language disclaiming all warranties running from the dealer is printed in bold type and on its face complies with I.C. 26–1–2–316. Michael Hahn executed the document June 29, 1977, the date of purchase, and its terms thus became a part of the bargain.

■ The Hahns contend, however, they were not aware of the nature and contents of the instrument since the Lorey salesman allegedly informed Mr. Hahn its execution was a mere formality. Fraudulent practices in the bargaining setting may be an indicia of procedural unconscionability. Nonetheless, the alleged conduct of the Lorey salesman was not so overreaching or oppressive as to rise to the level of unconscionability. There is no evidence Mr. Hahn was misled or fraudulently induced as to the nature and contents of the disclaimer despite the salesman's alleged statement. Moreover, the terms of the disclaimer were so boldly displayed and the purpose of the document was so clearly manifest a consumer of ordinary sophistication ought to have been on notice as to its contents.

Finally, the Hahns make the ingenious argument that because a majority of the Lorey stock is held by Ford Motor Co., as a part of its dealer development program, the attempt by Lorey to disclaim all implied warranties violates the Magnuson-Moss Warranty Act. They contend in reality it is the Ford Motor Co. which is disclaiming implied warranties in violation of 15 U.S.C. § 2308.

---

**9.** Regulations promulgated by the Federal Trade Commission, the government agency charged with administering the Act, appear to support the conclusion that warrantors are not prohibited from limiting available relief for a breach of warranty. 16 C.F.R. 701.3(a)(8) states that warrantor should explicitly disclose to purchaser "[a]ny exclusions of or limitations on relief such as incidental or consequential damages . . ." Ford has complied with such regulation.

**10.** The term "as is" is an accepted method in some instances of excluding implied warranties. I.C. 26–1–2–316(3)(a) provides:

"[u]nless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty;"

In the instant case, the term "As Is, Manufacturers Warranty Only" is somewhat confusing and standing alone would probably not suffice to exclude any implied warranties. Lorey, however, relies upon the conspicuous contents of the document in supporting its claim that it disclaimed all warranties.

The Ford Dealer Development Program is designed to assist potential dealers in financing the purchase of a dealership. It operates in lieu of conventional financing. Dealers who lack sufficient capital to purchase an available agency sign a note with the Ford Dealer Development Corporation. The Corporation agrees to provide financing and, in order to secure the loan, retains preferred stock of the dealership as collateral. Profits gleaned from the operation of the business are then utilized to pay the principal and interest due the Corporation in exchange for the stock held by the Corporation. In essence, the Corporation finances the purchase of an agency in much the same fashion as a traditional financial institution. We thus conclude it would be inaccurate to characterize Lorey and Ford Motor Co. as a single entity as the Hahns allege.

Because the Magnuson-Moss Act applies only to written warranties, it has no applicability with regard to Lorey. The evidence discloses Lorey made no written warranties. To the contrary, its disclaimer clearly excluded all warranties, express and implied. Therefore, Hahns' allegation that the Lorey disclaimer violated the Magnuson-Moss Act is misplaced.

Even assuming Ford and Lorey constituted a single unitary entity, there would be no merit in Hahns' argument that the dealer's disclaimer violates the Magnuson-Moss Act. The Lorey disclaimer explicitly states it does not affect the operation and terms of the warranty provided by manufacturer. Since the disclaimer limits neither the terms nor duration of the implied warranty given by Ford, it could not under any possible circumstance violate Section 2308 of the Act.

We therefore conclude the Hahns fail to establish the Lorey disclaimer was inadmissible as a matter of law.

### III

The Hahns contend the trial court erred in granting a judgment on the evidence in favor of Ford Motor Co. on the issue of punitive damages. Because we have determined the trial court correctly admitted the Ford booklet and Lorey disclaimer into evidence, we need not dispose of the issue on its merits.

■■■ To have reached its verdict, the jury determined there was not a breach of warranty or there was a breach of warranty but compensable damages were not sustained. If, indeed, the jury determined the Hahns failed to sustain their burden on the breach of warranty question, the issue of punitive damages is, of course, not pertinent. Similarly, if the jury concluded the Hahns prevailed on the warranty question but failed to establish actual damages, there may not be an award of punitive damages. As this court has indicated, a party must establish actual damages in order to recover punitive damages. Hahns *do not* argue error in the jury's failure to award compensatory damages. Indeed, they do not set forth any evidence on the issue of compensatory damages. We thus find the trial court did not err in granting judgment on the evidence in favor of Ford on the issue of punitive damages. *Large v. Gregory,* (1981) Ind.App., 417 N.E.2d 1160; *McCormick Piano and Organ Co., Inc. v. Geiger,* (1980) Ind.App., 412 N.E.2d 842.

### IV

The Hahns next contend the trial court erred in refusing to give Plaintiffs' tendered instruction # 16 which states:

"The Court instructs the jury that any evidence which was presented during this trial concerning Defendant's repairs of defects which existed in the Hahns' Ford LTD II cannot be considered as a defense to the Hahns' action for breach of warranty. This evidence can only be considered ·in mitigating the Hahns' damages."

Record at 621.

■■■■ The giving of instructions is entrusted to the trial court's discretion. As a general rule, the denial of a tendered instruction, even though it may be a correct statement of the law, is grounds for reversal only if the substance of the instruction

is not adequately covered by other instructions. *Brook v. St. John's Hickey Memorial Hospital*, (1978) 269 Ind. 270, 380 N.E.2d 72; *Kranda v. Houser-Norberg Medical Corp.*, (1981) Ind.App., 419 N.E.2d 1024. In determining whether any error resulted from the refusal to give a tendered instruction, we consider whether the tendered instruction is a correct statement of the law, whether there is evidence in the record to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions which were given. *Smith v. Insurance Co. of North America*, (1980) Ind.App., 411 N.E.2d 638.

■ Upon close examination of the twenty-nine final instructions given by the trial court, we conclude the subject matter of the tendered instruction was adequately covered by other instructions. Specifically, the jury was charged regarding the law pertaining to the elements of a breach of warranty action. It was instructed that a breach of warranty occurs where the goods fail to live up to the express or implied representations of quality made by the seller. Further, the trial court enunciated the standard for measuring and awarding relief for a breach. It informed the jury that pursuant to I.C. 26-1-2-714 (Burns Code Ed.) as a general rule the measure of damages for a breach of warranty is the difference at the time and place of acceptance between the value of goods accepted and the value they would have had if they had been as warranted.

■ Assuming *arguendo* the subject matter of the tendered instruction was not adequately covered by other instructions, the tendered instruction is inaccurate as a matter of law. It is true, as the instruction states, that evidence of repairs may not be considered in defense to a claim for breach of warranty.

■ The instruction further notes, however, that evidence of repairs "can only be considered in mitigating ... damages." Such a proposition, at least within the context of the present case, is erroneous. Absent any limitation on available remedies,

I.C. 26-1-2-714 provides damages are measured as of the time of delivery. Hence, any subsequent repairs will not diminish the amount of a monetary recovery. In fact, the cost of repairs is often utilized to ascertain the difference in value between the goods accepted and the value they would have had if delivered as warranted.

Finally, it should be noted the Hahns' use of the term "mitigating damages" represents a misapplication of terminology peculiar to the law. Because it is an expression peculiar to the law, the term "mitigation of damages" is a "word of art." *Black's Law Dictionary* revised 4th ed. (1968). The doctrine of mitigation of damages requires that when a contract has been breached the *non*-breaching party must make a reasonable effort to diminish the damages occasioned by the breach. *Salem Community School Corporation v. Richman*, (1980) Ind. App., 406 N.E.2d 269. The Hahns, however, attempt to employ the term with respect to a breaching party's efforts to diminish its liability for the breach. This use of the expression is clearly misplaced and would only engender confusion.

For the aforementioned reasons, we therefore conclude the trial court properly refused plaintiffs' tendered instruction # 16.

V

The Hahns allege the trial court erred in failing to permit them to assert rejection or revocation of acceptance as a defense to the Lorey counterclaim for the balance owing on the purchase price of the car. Specifically, they allege the trial court erred in sustaining Lorey's objection to certain evidence which purported to show the Hahns attempted to return the vehicle and in refusing Hahns' tendered instruction # 14.

Lorey objected to the admission of certain letters written by the Hahns' attorney which allegedly show the Hahns attempted to either rightfully reject the car pursuant to I.C. 26-1-2-602 or revoke acceptance in

accord with I.C. 26–1–2–608.[11] It contends the defenses of rejection and revocation of acceptance are inconsistent with Hahns' complaint. By bringing an action for breach of warranty, it claims the Hahns are proceeding under the contract and attempting to collect damages for the breach while at the same time maintaining they should not pay the balance due on the basis of rejection or revocation of acceptance.

Our courts have long held a party asserting a claim must be given an opportunity to present all evidence relevant to the theory of his cause unless such evidence is improper and inadmissible. *Traylor v. LaFayette National Bank*, (1973) 158 Ind.App. 552, 303 N.E.2d 672. The same rationale would seemingly apply when a party is presenting a defense to a counterclaim. Ind.Rules of Trial Procedure, Trial Rule 8(E)(2) provides:

"A pleading may also state as many separate claims or defenses as the pleader has regardless of consistency and whether based on legal or equitable grounds."

Inconsistencies between claims asserted in Plaintiffs' complaint and defenses pleaded in answer to a counterclaim are permissible under this rule.

 In the present case, however, the trial court determined the evidence inadmissible, not only on the fact the Hahns were attempting to assert the defenses of rejection and revocation of acceptance but also on the fact the letters contained evidence of settlement negotiations. Where the trial court sustains an objection to the admission of evidence, it will be upheld on appeal if there is any basis upon which the ruling is correct. *Sheets v. Garringer*, (1963) 135 Ind.App. 488, 194 N.E.2d 757.

 As a general rule, evidence of offers of compromise and settlement are excludable. As this court previously stated:

"* * * '[a]n offer, concession, or admission, made in the course of an ineffectual treaty of compromise, and constituting, in itself, the point yielded for the sake of peace, and not because it was just or true, is not competent evidence against the party making it; but the law is otherwise with regard to an independent fact admitted to be true, but not constituting such yielded point.' *Kintz v. R.J. Menz Lumber Co.* (1911), 47 Ind.App. 475, 94 N.E. 802; *Louisville, etc., R. Co. v. Wright* (1888), 115 Ind. 378, 16 N.E. 145, 17 N.E. 584, 7 Am.St. 432."

*Northern Indiana Steel Supply Company v. Chrisman*, (1965) 139 Ind.App. 27, 204 N.E.2d 668, *quoting Nat. Life, etc. Ins. Co. v. Williams*, (1925) 84 Ind.App. 343, 138 N.E. 826. Out-of-court settlements are favored by the law and parties should not be prejudiced when yielding certain points of contention in order to enhance the likelihood of compromise.

 The Hahns argue the court could have omitted the objectionable evidence and admitted the remainder of the proffered exhibits. We note, however, that no timely request was forthcoming. If part of the evidence offered is admissible and part is not, it is incumbent on the proponent, not the trial court, to select the admissible portion. If a party selects both the admissible and inadmissible together and the offer is rejected, the offering party may not complain on appeal. *Conner v. First National Bank in Wabash*, (1947) 118 Ind.App. 173, 76 N.E.2d 598; *McCormick, Handbook of the Law of Evidence* § 51, at 112 (2nd ed. 1972). Hahns' counsel explicitly informed the court of the general contents of the letter and the purpose for which the documents were offered. However, because the Hahns made no attempt to place the letters into the record, we are unable to say the trial court erroneously concluded

11. Rejection and revocation of acceptance are self-help remedies available to buyer when goods or the tender of delivery fail to conform to the contract. While similar, they vary in several significant respects. Rejection represents a combination of buyer's refusal to keep nonconforming goods and a notification to seller of that fact. I.C. 26–1–2–602. Revocation of acceptance is also a refusal by buyer to keep the goods but it comes at a later point in the transaction after buyer has already accepted the goods. Section 26–1–2–606 defines what constitutes "acceptance of goods." Section 26–1–2–608 delineates the instances in which buyer may rightfully revoke acceptance. *See* White and Summers §§ 8–1 to 8–4.

the letters contained inadmissible evidence of settlement negotiations and that such fact warranted exclusion. *Meeker v. Robinson,* (1977) Ind.App., 370 N.E.2d 392.

The Hahns further assert the trial court erred in rejecting plaintiff's tendered instruction # 14.[12] Lorey argues the instruction is an inaccurate statement of the law because it omits I.C. 26–1–2–602(1) which delineates some required elements of the defense of rejection. We agree. Section 26–1–2–602(1) provides:

"Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller."

As was previously noted, a tendered instruction must accurately state the law for its refusal to be error. In order for a rejection to be effective, it must be timely and there must have been reasonable notification of the rejection by the buyer to seller. This is one of the most persistently litigated issues in rejection cases. White and Summers § 8–3. The tendered instruction by the Hahns thus represented an incomplete and inaccurate statement of the law. It is not incumbent upon the trial court to engage in redaction or substitution for the parties and submit a modified instruction to the jury. Unless the trial court is under the duty to give the instruction exactly as requested, it does not commit error for refusing to submit it. *Mullins v. Bunch,* (1981) Ind., 425 N.E.2d 164.[13]

Judgment affirmed.

BUCHANAN, C. J., and SULLIVAN, J., concur.

---

12. Plaintiffs' tendered instruction # 14 provided:

"Michael Hahn and Judith Hahn are both plaintiffs and counter-defendants in this law suit. In defense of the counterclaim brought by Dick Lorey Ford, Inc., the Hahns, as counterdefendants, have raised the defense of rejection or revocation.

"There were in force statutes of the State of Indiana which provide:
Indiana Code 26–1–2–601
Sec. 601. Subject to the provisions of this Article on breach in installment contracts (section 2–612) and unless otherwise agreed under the sections on contractual limitation of remedy sections 2–718 and 2–719, if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may:
(a) reject the whole, or
(b) accept the whole; or
(c) accept any commercial unit or units and reject the rest.
Indiana Code 26–1–2–608
Section 608(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it:
(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.
Indiana Code 26–1–2–602(c)
(2) Subject to the provisions of the two (2) following section [sic] on rejected goods (sections 2–603 and 2–604) (c) the buyer has no further obligations with regards to goods rightfully rejected . . .
"If you find from a consideration of all of the evidence that the Hahns, as counterdefendants, rightfully revoked acceptance of the automobile pursuant to the above statutes, then you may find that the Hahns' obligation to Dick Lorey Ford, Inc. on its counterclaim terminated on the day that they either revoked or rejected the 1977 Ford LTD II.
"Indiana Pattern Jury Instructions
IC 26–1–2–601
IC 26–1–2–608
IC 26–1–2–602(2)(c) (Tr. 620)"

13. We question whether rejection was even an applicable defense in the present case because the Hahns apparently took delivery of the vehicle nearly 18 months and thousands of miles prior to the time they attempted to return it. As a general rule, a rightful rejection of goods must be within a reasonable time after delivery. In addition, buyer is under a duty to seasonably notify seller of his rejection. Acceptance of the goods clearly precludes buyer from asserting rejection as a defense. A trial court, of course, is not under a duty to instruct the jury on propositions of law not pertinent to the issues or applicable to the evidence. *Mullins,* 425 N.E.2d at 166.