FILED
United States Court of Appeals
Tenth Circuit

November 15, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

WASATCH TRANSPORTATION,
INC.,

      Plaintiff - Appellant,

v.

FOREST RIVER, INC.,
d/b/a Glaval Bus,

      Defendant - Appellee.

No. 21-4107

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:17-CV-00752-HCN)**

_____

Matthew N. Evans (Carol A. Funk and Whitney Hulet Krogue, with him on
the briefs), Ray Quinney & Nebeker P.C., Salt Lake City, Utah, for
Plaintiff-Appellant.

John D. Papageorge, Taft Stettinius & Hollister LLP, Indianapolis, Indiana
(Nadine E. McSpadden, Taft Stettinius & Hollister, and Andrew D. Wright
and Scarlet R. Smith, Strong & Hanni, P.C., Salt Lake City, Utah, with him
on the briefs), for Defendant-Appellee.

_____

Before **HOLMES**, **BACHARACH**, **and PHILLIPS**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

The English language is full of words with possibilities for multiple meanings based on the context. An example is the word *warranty*, which can refer to the length of the protection, the parts and functions that are covered, or the available remedies. For example, a car manufacturer might refer to its warranty as one for 5 years or 100,000 miles. But the manufacturer might also refer to a warranty based on the parts that are covered or the available remedies. For instance, a manufacturer might refer to its warranty as one covering only repair costs.

If a customer testifies that he saw the manufacturer's warranty, was he referring to the length, the covered parts or functions, or the remedies? Here the district court assumed that the customer must be referring to the covered parts and the available remedies. But that assumption may be wrong; the customer could have been using the word *warranty* to refer to the duration.

## I.    Wasatch Transportation buys three buses from Forest River, Inc.

The meaning of the word *warranty* figures prominently in this appeal. A transportation company (Wasatch Transportation, Inc.) needed three buses to comply with a state contract. Compliance required particularly durable buses because the routes would exceed 350 miles in inclement weather with substantial changes in elevation.

2

To carry out the state contract, Wasatch considered buying Synergy buses from the manufacturer (Forest River, Inc.).[1] A Wasatch executive spoke with Forest River's sales personnel, who allegedly said that the Synergy buses

- could handle the route,

- would be a great fit for the route,

- were great buses, and

- were "[q]uality buses" that Forest River "would take really good care of" and would "be amazing when they were done."

Appellant's App'x vol. 2, at 263–65. Wasatch bought three Synergy buses from Forest River, allegedly based on these assurances about the buses.

## II.    Forest River provides written warranties for fraud and breach of warranty.

For each bus, Forest River provided a warranty packet containing three limitations:

1.    The warranty covered only repair costs.

2.    The warranty was exclusive, taking the place of other possible warranties.

3.    The warranty provided the buyer's only remedy for defects under any legal theory.

*Id.* at 444–45.

---

[1]    Forest River does business as "Glaval Bus."

3

**III.   After the buses break down, Wasatch sues Forest River for fraud and breach of warranty.**

After the purchase, the buses developed mechanical problems. According to Wasatch, one bus broke down within 300 miles of Forest River's facility. Even after the bus was repaired, it continued to break down. Another bus broke down soon after the purchase and was usable only a third of the next year. Given the breakdowns, Wasatch allegedly had to buy another bus to comply with the state contract; but the state cancelled the contract anyway. Complaining of the cancellation and the cost of buying another bus, Wasatch sued Forest River for

- breach of an express warranty that the buses were suitable for the route,

- breach of an implied warranty of fitness for a particular purpose, and

- fraud.[2]

**IV.   The district court grants summary judgment to Forest River.**

The district court granted summary judgment to Forest River, reasoning that its warranty packet prevented any relief.

The court relied on deposition testimony from the Wasatch executive who had met with Forest River personnel before buying the buses. In the deposition, the executive acknowledged that he'd asked about the warranty

---

[2]     In district court, Wasatch also claimed negligent misrepresentation. But this claim isn't involved in the appeal.

4

and conducted his own research. Given the executive's testimony, the court concluded that "a reasonable factfinder would be required to find . . . that [the executive] had the opportunity to review Forest River's written limited warranty and was aware of its terms prior to the purchase." Appellant's App'x vol. 5, at 1205.

In the court's view, Wasatch's knowledge of the warranty packet prevented recovery. For the claims involving breach of warranty, the court reasoned that the warranty packet had

- expressly excluded oral warranties and

- omitted a warranty of fitness for a particular purpose.

For the fraud claim, the court reasoned that Wasatch

- had known of limitations in the warranty packet and

- could not have reasonably relied on Forest River's statements.

## V. We apply the summary-judgment standard based on case law from Utah and Indiana.

We conduct de novo review of the district court's grant of summary judgment. *Murphy v. City of Tulsa*, 950 F.3d 641, 643 (10th Cir. 2019). In conducting this review, we consider the evidence in the light most favorable to Wasatch. *Id.* We may affirm only if no genuine dispute of material fact exists and Forest River is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1174 (10th Cir. 2007).

5

In district court, the parties disputed the applicability of Utah law or Indiana law. The district court declined to address this dispute, relying on the similarities in the states' case law. Given these similarities, we also decline to decide whether Utah law or Indiana law applies. *See Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008) (declining to decide whether Utah or Nevada law applies because the states' laws were substantially similar in all relevant respects).

## VI.    A factfinder could reasonably conclude that Wasatch had bought the buses without knowing about the warranty packet.

A seller's warranties are enforceable only if they constituted part of the bargain when the parties entered the sales contract. *See LWT, Inc. v. Childers*, 19 F.3d 539, 541 (10th Cir. 1994); *see also Hahn v. Ford Motor Co.*, 434 N.E.2d 943, 948 (Ind. Ct. App. 1982) ("A modification of warranty or limitation of remedy contained in a manufacturers [sic] manual received by purchaser subsequent to sale has not been bargained for and thus does not limit recovery for implied or express warranties which arose prior to sale."). Wasatch insists that it bought the buses before learning of the warranty packet, rendering its terms unenforceable.

Wasatch acknowledges that its executive testified that he had bought the buses after reviewing Forest River's *warranty*. But Wasatch contends that the executive was referring only to Forest River's marketing materials, which contained descriptions of the warranty's duration—not the more

6

detailed warranty packet, which reflected the details involving coverage of parts and limitations on remedies.

Forest River interprets the Wasatch executive's testimony as pertaining to the warranty packet, stating that he'd admittedly

- met with Forest River personnel and discussed the length and scope of the coverage and

- bought the buses after researching the warranties.

Appellant's App'x vol. 2, at 266, 275. For example, Forest River spotlights two exchanges in the deposition about the warranty packet:

Q.    And did anyone . . . give you warranty booklets with the buses?

A.    I can't remember if the warranty booklets came from Lewis or [Forest River] directly.

Q.    Okay.

A.    I think they were on the buses when we picked them up from [Forest River], actually. There was like a packet that—I believe the—the actual exchange took place when I picked up my bus from, you know, Rick or Heidi. One of those two walked me through the bus and gave me the warranty packet, and then we brought it to Lewis.

Q.    And to your knowledge, the warranty packet was in the other two buses?

A.    Correct.

Q.    And you had reviewed all of those warranties prior to ordering the buses?

A.    That's correct.

*Id.* at 272.

> Q.   Does this document [the warranty packet] refresh your memory on the . . . warranty that you may have reviewed?
>
> A.   It does.

*Id.* at 275. From these excerpts, Forest River characterizes the warranty packet as part of the bargain.

In our view, however, a factfinder could reasonably reject Forest River's characterization of the deposition testimony. The Wasatch executive acknowledged that he'd reviewed "the warranty" and " those warranties." *Id.* at 266, 272, But was he referring to the general terms in Forest River's marketing materials or the details in the warranty packet?

Wasatch contends that its executive was referring to the general terms in the marketing materials. In a declaration, the Wasatch executive stated under oath that

- to his knowledge, the warranty packet wasn't available on Forest River's website,

- during a visit to the Forest River plant, no one had shown him the warranty packet, and

- Forest River hadn't disclosed its disclaimer of liability or limitation on damages.

Appellant's App'x vol. 4, at 1104. The district court declined to consider this declaration on the ground that it was a sham.

We disagree, concluding that the declaration merited consideration. A court may ignore a declaration if it conflicts with a witness's earlier

sworn statements and would create a sham factual issue. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). But the court should not ignore a declaration that clarifies ambiguous deposition testimony. *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1258 (10th Cir. 2001).

The Wasatch executive's deposition testimony was ambiguous. From the deposition, a factfinder could conclude that the executive had reviewed the warranty packet before the sale. But a factfinder could also conclude that the executive had reviewed the warranty described in Forest River's marketing materials, *not* the warranty described in the warranty packet.

Either conclusion would be reasonable in light of the context of the executive's deposition testimony. *See Brooks v. Colo. Dept. of Corrections*, 12 F.4th 1160, 1170–71 (10th Cir. 2021) (concluding that deposition testimony was ambiguous in light of the context of the testimony). Although the executive stated that he'd seen "the warranty packet" when he had picked up the buses, he was then asked whether he'd seen "*all of those warranties* prior to ordering the buses." Appellant's App'x vol. 2, at 272 (emphasis added). The executive agreed that he'd reviewed the warranties "through his homework and research." *Id.*

This reference to "homework and research" related to an earlier exchange in the deposition. In that exchange, the executive had testified that he'd reviewed the warranties on "the website or brochures and things

like that," though "[m]aybe not for [Wasatch's] specific buses." *Id*. at 266.[3]

Later in the deposition, the questioner appeared to refer back to the warranties that the executive had reviewed on the website and in brochures—not in the warranty packets. So when the executive referred later to "those warranties," he could have been referring again to the descriptions on the website and in the brochures rather than in the warranty packets.

Though the marketing materials and warranty packets referred to the same warranties, the contents bore substantial differences. For example, this is what Forest River's brochure said about the warranty:

---

[3]    The warranty packet set forth the warranties for a specific bus. *See* Appellant's App'x vol. 2, at 439 ("This booklet explains in detail the warranty coverage for *your bus*." (emphasis added)). So when the executive testified that he might not have reviewed the warranty "for our specific buses," a factfinder could reasonably infer that he hadn't reviewed the warranty packet. *See* Appellant's App'x vol. 2, at 266.

Appellant's App'x vol. 4, at 1093, 1095. In contrast, the warranty packet

contained eight pages, setting out limitations on the coverage and on the

remedies:

**LIMITATION OF LIABILITY**

THE LIABILITY OF GLAVAL BUS UNDER THIS WARRANTY IS LIMITED TO THE COST TO REPAIR OR REPLACE, IN THE SOLE DISCRETION OF GLAVAL BUS, THE DEFECTIVE COMPONENT OR PART, WHICH IN NO EVENT SHALL EXCEED THE FAIR MARKET VALUE OF THE BUS AT THE TIME THE DEFECT IS DISCOVERED. IN NO EVENT SHALL GLAVAL BUS BE LIABLE ON A CLAIM OF ANY KIND FOR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO INJURIES TO PERSONS OR DAMAGE TO PROPERTY, LOSS OF PROFITS OR ANTICIPATED PROFITS, OR ANY LOSS OF VEHICLE USE, RESULTING FROM THE OWNERSHIP OR USE OF THE BUS.

**LIMITS OF WARRANTY**

THIS WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES OF ANY KIND WHETHER WRITTEN, ORAL, OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IT CANNOT BE AMENDED BY ANY DEALERSHIP, SALESPERSON OR AGENT. THE SOLE OBLIGATION OF GLAVAL BUS UNDER THIS WARRANTY SHALL BE TO REPAIR OR REPLACE AT THE DISCRETION OF GLAVAL BUS, ANY DEFECTIVE COMPONENT OR PART.

**PURCHASER'S EXCLUSIVE REMEDY**

THIS WARRANTY SHALL BE THE OWNER'S SOLE AND EXCLUSIVE REMEDY AGAINST GLAVAL BUS, WHETHER IN CONTRACT, UNDER STATUTE (INCLUDING STATUTORY PROVISIONS AS TO CONDITIONS AS TO QUALITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF GOODS SUPPLIED PURSUANT TO THE CONTRACT OF SALE), WARRANTY, TORT, STRICT LIABILITY OR ANY OTHER LEGAL THEORY.

Appellant's App'x vol. 2, at 444–45.

The deposition exchange did not specify which *warranty* the Wasatch executive had reviewed. So a factfinder could reasonably find that Wasatch had bought the buses without knowing the three limitations in the warranty packet. Given the reasonableness of that finding, the district court shouldn't have decided as a matter of law that Wasatch had known about the limitations in the warranty packet.[4]

## VII. We reject Forest River's arguments for affirmance on alternative grounds.

Forest River argues that we should affirm the grant of summary judgment on four alternative grounds: (1) estoppel, (2) puffery, (3) lack of damages, and (4) lack of reasonable reliance. We reject these arguments.

### A. Wasatch is not estopped from challenging enforcement of the limitations in the written warranty.

Forest River contends that Wasatch cannot challenge the warranty packet's limitations. For this contention, Forest River invokes the doctrine of estoppel, observing that Wasatch sought and obtained repairs for the

---

[4]    The dissent relies on the Wasatch executive's references to "those warranties" and his pleasure with the length of the warranty and "what it covered." Dissent at 1–2 (quoting Appellant's App'x vol. 2, at 266, 272). In the dissent's view, those references establish that the executive had seen the warranty packet before purchasing the buses. In our view, the context creates an ambiguity in these references; the executive could have been referring to the descriptions of coverage in the marketing materials. Given the context, the factfinder should be allowed to interpret these references.

12

buses. Wasatch responds that it obtained repairs based on the oral warranty, not the warranty packet.

In district court, Forest River did not make this estoppel argument when seeking summary judgment. *See* Appellant's App'x vol. 1, at 49–84. Because estoppel is an affirmative defense, Forest River bore the burden of persuasion. *See State v. Hamilton*, 70 P.3d 111, 120 (Utah 2003) (stating that "estoppel is an affirmative defense" and the defendant "bore the burden of proving reliance"); *Schill v. Choate*, 247 N.E.2d 688, 696 (Ind. App. 1969) ("Since estoppel is an affirmative defense, [the defendants] had the burden to suggest facts which would invoke that doctrine before the trial court."). So Forest River bore the burden to show the absence of a disputed material fact. *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). Forest River didn't satisfy this burden.

In asserting estoppel, Forest River assumes that Wasatch knowingly benefited from the warranty described in the packet. *See, e.g.*, *Mathews v. REV Recreation Grp., Inc.*, 931 F.3d 619, 623 (7th Cir. 2019) (stating that the plaintiffs "cannot have it both ways: relying on the contract when it works to their advantage to get repairs done and then alleging that it is unconscionable when it doesn't"). But in moving for summary judgment, Forest River didn't argue that Wasatch had obtained the repairs based on the warranty packet rather than the oral warranties preceding the sale. So Wasatch had no chance to respond to this argument as a basis for summary

judgment. *See Kannady v. City of Kiowa*, 590 F.3d 1161, 1170 (10th Cir. 2010) (requiring notice to the party that it "had to come forward with all of [its] evidence"). Given the inability to respond, we decline to award summary judgment on the basis of estoppel. *See Tavery v. United States*, 32 F.3d 1423, 1427 n.5 (10th Cir. 1994) (stating that we would not affirm on alternative ground because the summary judgment motion hadn't alerted the plaintiff to the need to present evidence on a particular issue).

> **B.    A factfinder could reasonably conclude that Forest River's assurances had not constituted puffery.**

Forest River also argues that the alleged statements about the buses constituted puffery rather than oral warranties. Forest River characterizes Wasatch as a sophisticated buyer that should have used its own expertise in assessing Forest River's statements about the buses.

When a seller expresses an opinion about the quality of a product, the opinion may constitute puffery rather than a warranty. *See Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 330 (Ind. 2013); *Boud v. SDNCO, Inc.*, 54 P.3d 1131, 1134–36, 1138 (Utah 2002). And some of the alleged statements do involve puffery rather than facts. For example, Wasatch cites statements from Forest River employees that the buses were "[the] highest end product," that Forest River "would take really good care of the buses," that the buses would be "amazing," that Forest River would do "a good job building them," and that construction of the buses "would be a high

14

priority." Appellant's Reply Br. at 18–19 (quoting Appellant's App'x vol. 2, at 264). These alleged statements would not involve factual matters that could be proven true or false.

But Wasatch also points to alleged statements that would involve factual matters. For instance, Wasatch cites Forest River's alleged statement that the buses were suitable for a particularly difficult route spanning over 350 miles in inclement weather and with substantial changes in elevation. This alleged statement would have quelled Wasatch's stated concern about the durability of the buses, creating a factual question about the existence of a warranty that the buses could endure this route. *See Wiseman v. Wolfe's Terre Haute Auto Auction, Inc.*, 459 N.E.2d 736, 737–38 (Ind. Ct. App. 1984) (concluding that a description of a truck as "road ready" was a statement of fact sufficient to create a warranty). So we can't affirm by lumping together all of the alleged statements as mere puffery.

### C.    Factual disputes exist on Wasatch's damages.

Forest River also insists that Wasatch hasn't presented evidence tying the defects to the state's cancellation of the contract. Without this evidence of causation, Forest River contends, Wasatch didn't prove damages.

Forest River points to Wasatch's separate suit against the Utah Department of Transportation. There the Department didn't allege that it had terminated the contract because of problems with the buses. Instead,

15

the Department denied terminating the contract, argued that Wasatch had breached the contract, and accused Wasatch of embezzlement. Forest River also argues that Wasatch has relied on hearsay and speculation to link termination of the state contract to defects in the buses.

We reject this alternative argument for affirmance. For the state contract, factual questions existed about Wasatch's reliability based on the constant breakdowns. It's reasonable to conclude that these breakdowns had contributed to the state's dissatisfaction with Wasatch's performance and to termination of the contract.

Apart from termination of the state contract, Wasatch presented evidence tying the defects to other damages. For example, Wasatch presented evidence that it had to buy a new bus to cover the route. *See* Appellant's App'x vol. 4, at 1006.[5] And Forest River doesn't question the availability of damages for Wasatch's extra expense in buying the new bus.

Because factual issues remain as to Wasatch's alleged damages, we can't affirm the grant of summary judgment on this ground.

---

[5]     In seeking summary judgment, Forest River asserted that Wasatch had relied solely on cancellation of the state contract. In the amended complaint, however, Wasatch had also alleged the need to buy another bus to continue servicing the route. Appellant's App'x vol. 1, at 21.

**D.    Forest River didn't prevent a fact-issue on reasonable reliance.**

Forest River also argues that even if it hadn't disclosed the warranty packet, Wasatch should have read the contract or asked to see a copy of the packet before relying on oral warranties. But Forest River didn't make this argument in its summary-judgment motion, so Wasatch never had an opportunity to present evidence on this issue. Without that opportunity, we would ordinarily decline to affirm on an alternative ground. *See* pp. 13–14, above (discussing *Tavery v. United States*, 32 F.3d 1423, 1427 n.5 (10th Cir. 1994)).

Even if we were to consider affirmance on this ground, the summary-judgment record wouldn't prevent a finding of reasonable reliance. That record contains Forest River's order form, and the form says nothing about a separate document limiting the warranty. Appellant's App'x vol. 4, at 1107–10. Without such a disclosure, how would Wasatch have known that another document had limited the warranties? To the contrary, Wasatch presented evidence that it had obtained oral assurances that the buses could travel a demanding route of over 350 miles in inclement weather and with substantial changes in elevation.[6] From that evidence, a factfinder could

---

[6]    Forest River also argues that it was unreasonable to rely on statements of opinion. But some of the asserted misrepresentations constituted statements of fact. *See* Part VII(B), above.

17

justifiably determine that Wasatch had reasonably relied on Forest River's oral warranties.

* * *

We vacate the grant of summary judgment to Forest River and remand the case to the district court for further proceedings.

21-4107, *Wasatch Transportation v. Forest River*
**PHILLIPS**, J., dissenting.

I would affirm. The district court correctly ruled that the deposition testimony

shows "Mr. [Steven] Fuller [of Wasatch Transportation] had the opportunity to review

Forest River's written limited warranty and was aware of its terms prior to the purchase."

App. vol. 5, at 1205. As the court found, Mr. Fuller admitted during his deposition that he

indeed had such awareness from the outset. Mr. Fuller unambiguously testified that he

had pre-purchase knowledge of Forest River's limited warranty[1]:

Q: And did anyone at Lewis give you warranty booklets with the buses?

A: I can't remember if the warranty booklets came from Lewis or from Glaval directly.

Q: Okay.

A: I think they [the warranties] were on the buses when we picked them up from Glaval, actually. There was like a packet that—I believe the—the actual exchange took place when I picked up my bus from, you know, Rick or Heidi. One of those two walked me through the bus and gave me the warranty packet, and then we brought it to Lewis.

Q: And to your knowledge, the warranty packet information was in the other two buses?

A: Correct.

Q: And you had reviewed *all* of *those* warranties prior to ordering the buses?

A: That's correct.

---

[1] A warranty provides (1) defined coverage (2) for a specified duration. I disagree that the two components are evaluated as separate warranties or that the word "warranty" has a multiple meanings.

R. vol. 2., at 272 (emphases added). Read together with the preceding lines, as provided above, it is clear that "*all* of *those* warranties" refers to those warranties contained in the "warranty-packet information." Even splintering the warranty into pieces—duration, parts, remedies—the majority encounters a dead end. By admitting that he reviewed "all of those warranties" in the "warranty-packet information," Mr. Fuller admitted that he had reviewed all the majority's splintered pieces too.

If any doubt remained on this point, Mr. Fuller dispelled it when he testified that, during his initial visit to Forest River in November 2013, he approved of the warranty's duration *and coverage*:

> Q: Did you ask any questions during this November visit to Glaval about its warranty?
>
> A: Absolutely.
>
> Q: And what—what were you told?
>
> A: I can't remember the specific discussions pertaining to the warranty, other than I was pleased about how long it was *and what it covered*.

*Id.* at 266 (emphasis added). This alone undoes the majority's central argument that Mr. Fuller might not have known of the warranty *coverage* terms before reading the warranty packets inside the buses at delivery.

And still more. Mr. Fuller testified that he continued to communicate with Forest River about warranties after his November 2013 visit to Forest River's plant and before Wasatch's ordering the buses in January 2014:

> Q: Did you have any further conversations with Heidi [of Forest River] between your visit to Elkhart [November 2013] and the time that the buses were ordered [January 2014]?

2

A: I'm confident we did, yeah.

Q: And what would you have talked about?

A: Timing. *Warranties.* Bus quality. All the same stuff several times. Specific equipment on the buses, those types of things.

*Id.* at 268 (emphasis added). The district court correctly ruled that Mr. Fuller's deposition testimony establishes that he knew the terms of Forest River's warranties before the bus purchases.

None of this is startling. Mr. Fuller was a high-level employee of a major commercial business and was responsible for guiding a significant purchasing decision:

Q: And did you understand what the terms of the Freightliner warranty were?

A: Probably.

Q: What about the Cummins engine warranty?

A: I probably understood those as well.

Q: You were pretty thorough in your work; weren't you?

A: I believe I was, yes.

Q: Did you ask to see any of the warranties from any of these manufacturers?

A: I believe I reviewed all the warranties from all the manufacturers. Maybe not for our specific buses, but based on, you know, the website or brochures and things like that.

*Id.* at 266.

I don't read Mr. Fuller's last answer as addressing Forest River's warranty. Nothing in it undermines Mr. Fuller's testimony about his knowledge of Forest River's warranty during his initial visit in November 2013 or his continued communications with

3

Forest River about warranties in the weeks leading up to Wasatch Transportation's

ordering the buses in January 2014.

Finally, I would rule that the district court didn't abuse its discretion in

disregarding Mr. Fuller's declaration. The declaration came in response to Forest River's

motion for summary judgment. As the district court noted, "this declaration cannot be

squared with Mr. Fuller's deposition testimony."[2] App. vol. 5, at 1204. The court acted

within its discretion in applying the rule that "when a declaration conflicts with previous

testimony, the declaration 'will be disregarded when a court determines that it represents

an attempt to create a sham fact issue.'" *Id.* (quoting *Steele v. Kroenke Sports Enters.,*

*L.L.C.*, 264 F. App'x 735, 744 (10th Cir. 2008)).

For these reasons, I would affirm the district court's order granting summary

judgment to Forest River.

---

[2] At the end of the deposition, defense counsel asked, "Will Mr. Fuller read and sign?" and was told "Yes." App. vol. 2, at 305. In addition, I note that counsel for Wasatch Transportation chose not to ask Mr. Fuller any questions at the deposition, so I surmise that it saw no need to "clarify" his testimony as it later claims to do with his declaration. Thus, Forest River pinned Mr. Fuller to crucial testimony. The district court wisely declined Wasatch Transportation's plea to unpin him.