In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 18-1982

VANESSA MATHEWS and RANDY MATHEWS

*Plaintiffs-Appellants*,

*v.*

REV RECREATION GROUP, INC.,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:15-cv-247 — **William C. Lee**, *Judge*.

———————————

ARGUED APRIL 2, 2019 — DECIDED JULY 26, 2019

———————————

Before HAMILTON, BARRETT, and SCUDDER, *Circuit Judges*.

BARRETT, *Circuit Judge*. Vanessa and Randy Mathews pur-
chased an RV, which came with a one-year warranty from the
manufacturer, REV Recreation Group, Inc. The RV was rid-
dled with problems from the time that they bought it, and
these problems ultimately led the Mathews to sue REV. We
sympathize with the Mathews' plight; they bought a lemon.
But because they have not shown that REV failed to honor its

warranties or that the warranty provisions were unconscionable, we must affirm the district court's grant of summary judgment to REV.

## I.

Vanessa and Randy Mathews purchased a Holiday Rambler Presidential RV on May 7, 2014 from Mellott Brothers Trailer Sales, Inc. The RV came with a warranty from the manufacturer, REV Recreation Group, Inc., which limited both express and implied warranties to one year from the purchase date. To take advantage of the warranty, the Mathews had to notify REV or an authorized dealer within five days of discovering a defect. Moreover, the warranty stated that "[i]f the repair or replacement remedy fails to successfully cure a defect after [REV] received a reasonable opportunity to cure the defect[], your sole and exclusive remedy shall be limited to Warrantor paying you the costs of having an independent third party perform repair(s) to the defect(s)." The Mathews were told about the warranty when they bought the RV, but they were not initially given a hard copy.

The Mathews say that they encountered problems with the RV almost as soon as they drove it off the lot. They called the dealership to report that there were issues with the interior lights, the refrigerator, and the leveling system. The Mellott Brothers service manager recommended that they go to an auto parts store and replace the fuses in order to fix the issues, which they did. The Mathews say that they also noticed other problems on this first trip: water leaked from the shower, and the TV and DVD player didn't work. But they didn't contact anyone about these issues.

A month later, the Mathews went on another trip and claim to have had even more difficulty: the converter was blowing fuses, the leveling jacks worked only intermittently, the curbside slide cable broke, and there were still problems with the TV and DVD player. After calling the Mellott Brothers again, the Mathews were given the number for REV so that they could locate an authorized repair center. REV told them that they could go to a local dealer near them, Johnson's RV, but would need to obtain approval from REV before the dealer performed repairs that would be covered under the warranty. Johnson's RV completed the repairs and told the Mathews that the repair work was covered, but neither the Mathews nor anyone from Johnson's RV ever contacted REV about this work (though notably, the Mathews were never forced to pay for the repairs). This happened again a few months later when Johnson's RV fixed the curbside slide cable—no one notified REV that repair work had been done.

Around a month later, the Mathews contacted REV to inform them that they were having issues with the RV. REV arranged to repair the RV at its factory store. After completing the repairs, it issued an extended goodwill warranty for "defective workmanship or materials in manufacturing"—although the warranty specifically excluded an extension of the limited warranty "or any other warranties."

In March 2015, the Mathews again contacted REV, this time about problems with the cable for the air conditioning unit, the main slide, and the sealing tape on the slides. The Mathews asked REV to buy back the RV, but REV declined to do so and instead promised to repair the issues pursuant to the warranty. REV arranged to pick up the RV to repair it and

once again extended the goodwill warranty. In May 2015, REV also provided the Mathews a copy of the warranty.

REV returned the RV to the Mathews in June 2015, and the Mathews never again took the RV to REV or any other authorized or independent dealer for repair. Instead, their attorney sent a letter to REV in July 2015 alleging that it had breached its warranties. Fed up, the Mathews filed suit soon after. In their amended complaint, they alleged breaches of express and implied warranties, as well as violations of both the Indiana Deceptive Consumer Sales Act (IDCSA) and the Magnuson–Moss Warranty Act.[1] They claimed that REV had failed to fix the TV, DVD player, and air conditioning/slide out seals. They also asserted that in 2016, after they had filed suit, they noticed problems with the kitchen cabinets, a latent issue with the water tank, and that the rear of the coach was falling out. The Mathews conceded, however, that they did not raise this second group of issues with REV within the one-year warranty period.

REV moved for summary judgment on all counts, and the district court granted the motion. It explained that "while the facts and evidence support the Mathews' contention that the RV had numerous problems, they do not support the allegations that REV failed to honor its warranties." Because REV was not given a reasonable opportunity to cure any defects, the court said, REV did not breach its express or implied warranties. It also concluded that the warranty's limitations were not unconscionable. And because the alleged warranty violatins had been the basis for the Matthews' claims under both

---

[1] The Magnuson–Moss Warranty Act is a federal statute that, among other things, permits consumers to sue to enforce state law warranty obligations. *See* 15 U.S.C. § 2310(d)(1).

the IDCSA and the Magnuson–Moss Warranty Act, the court held that those claims failed too.

The Mathews appealed. Although, as the district court rightly noted, "[t]his case is a cluttered mess of immaterial factual disputes, unsupportable claims and maze-like presentation of arguments," we gather that the Mathews raise the same arguments before us that they did below: that REV breached express and implied warranties and that REV violated both the IDCSA and the Magnuson–Moss Warranty Act.

## II.

The Mathews first argue that REV breached its express warranty. To prevail on a breach of warranty claim in Indiana, a plaintiff must prove (1) the existence of a warranty, (2) a breach, (3) causation, and (4) damages. *See Peltz Const. Co. v. Dunham*, 436 N.E.2d 892, 894 (Ind. Ct. App. 1982). REV argues that the Mathews cannot establish a breach because it repaired all of the issues that the Mathews presented to it during the warranty period. Indeed, the Mathews admit that they failed to give REV a chance to complete any new repairs after REV returned the RV to them in June 2015.

But the Mathews argue that REV still breached the warranty because, under Indiana law, a warranty can be breached "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose." Ind. Code § 26-1-2-719(2); *see also Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634, 643 (Ind. Ct. App. 2004). The district court concluded that because the Mathews had not given REV a reasonable opportunity to cure the defects, which the warranty required, the warranty could not have failed in its essential purpose. *See Anderson v. Gulf*

*Stream Coach, Inc.*, 662 F.3d 775, 783–84 (7th Cir. 2011) (explaining that, under Indiana law, the buyer has to give the seller a reasonable opportunity to cure "if the terms of the warranty impose that requirement"); *Aamco Transmissions v. Air Sys., Inc.*, 459 N.E.2d 1215, 1217 (Ind. Ct. App. 1984). We agree.

The Mathews rightly note that REV was in fact given a chance to fix at least some of the issues: the TV, the DVD player, and the air conditioning/slide out seals. But even assuming that we can count the repair attempts at Johnson's RV—and it's doubtful that we should because REV was not notified about them—REV had only two chances to fix each of these problems. Under Indiana law, two chances is not a reasonable opportunity to cure the defects such that the warranty failed of its essential purpose. *Cf. General Motors Corp. v. Sheets*, 818 N.E.2d 49, 53 (Ind. Ct. App. 2004) (explaining that under Indiana's Lemon Law, "[a] reasonable number of attempts is considered to have been undertaken if the nonconformity has been subject to repair *at least four times* but continues to exist or if the vehicle has been out of service for at least thirty business days and the nonconformity continues to exist" (emphasis added)); *Mayew v. Chrysler, LLC*, 2008 WL 4447707, at *4 (Del. Super. Ct. 2008) (explaining that under the Delaware Warranty Act, "a plaintiff must permit the dealer at least four opportunities to attempt to repair the alleged defect").

And even if the Mathews could show that REV had a reasonable opportunity to repair the RV's defects, the limited warranty did not fail in its essential purpose because the Mathews did not avail themselves of the contract's back-up remedy—which required that if REV failed to cure a defect,

the Mathews' "sole and exclusive remedy shall be limited to Warrantor paying you the costs of having an independent third party perform repair(s) to the defect(s)."

The Mathews next argue that REV breached the implied warranty of merchantability by selling them an RV that was not in merchantable condition at the time that they bought it. But here too the Mathews' failure to give REV a reasonable opportunity to cure the alleged defects is fatal to their claim.[2] Recognizing this, the Mathews instead contend that the warranty's limitations—for both the express and implied warranties—were unconscionable for two main reasons. First, they didn't receive a copy of the warranty at the time of purchase. Second, the one-year limited warranty period was an insufficient amount of time for them to recognize a latent defect like the water tank.

Indiana courts have held that an unconscionable contract is one that "no sensible man not under delusion, duress or in distress would make, and … no honest and fair man would accept." *Weaver v. Am. Oil Co.*, 276 N.E.2d 144, 146 (Ind. 1971) (citation omitted). The district court correctly held that the Mathews' arguments did not satisfy that standard. As for

---

2 In one conclusory sentence and citation, the Mathews suggest that they did not have to give REV an opportunity to cure its failure to comply with the implied warranty. But without anything more by way of argument or citation to Indiana case law, we do not consider the argument. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim."); *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point." (emphasis omitted)).

their claim that the warranty was unconscionable because they didn't receive a hard copy, the district court observed:

> [T]he Mathews were aware of the Limited Warranty and its terms, and even took advantage of it by having repair work done at REV's factory on two (and only two) occasions, so they cannot claim now that any of its terms or limitations are unconscionable based on the fact that they did not receive [a] physical copy of it at the time of sale.

In other words, the Mathews cannot have it both ways: relying on the contract when it works to their advantage to get repairs done and then alleging that it is unconscionable when it doesn't. *See Dixon v. Monaco Coach Corp.*, 2009 WL 187837, at *3 (N.D. Ind. 2009) ("[T]he evidence is undisputed that the Dixons took advantage of the warranty prior to the filing of their claim, requesting and receiving numerous repairs from Monaco during the applicable warranty period. As such, the Dixons can not [sic] now argue that they are suddenly surprised by the application of the limited warranty and its terms relating to the filing of breach of warranty claims."). And as for the Mathews' contention that the warranty's one-year time limitation was unconscionable, the district court rightly noted that "[t]he possibility that a latent defect may exist is one of the risks present at the time the contract is formed, and does not, in and of itself, render a contract unconscionable." (quoting *Popham v. Keystone RV Co.*, 2016 WL 4993393, at *6 (N.D. Ind. 2016)). We thus agree with the district court that the contract's limited warranty was not unconscionable—it was not one that "no honest and fair man" would accept. *See Weaver*, 276 N.E.2d at 146.

Finally, because the Mathews have not established that a warranty was breached or that the limitations in the warranty were unconscionable, their remaining claims under the IDCSA and Magnuson–Moss Warranty Act, which were based on the same arguments, fail as well.

\* \* \*

We are sympathetic to the Mathews; they were sold an RV that had problems from the day that they bought it. But because they have not established that REV breached its express or implied warranties—or any other law—we agree with the district court that their claims fail.

AFFIRMED.