


FILED

May 13 2025, 10:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 24S-PL-286

## Glenn Thomas, as Personal Representative of the Estate of Bernadette O'Malley,

*Appellant (Plaintiff below)*

—v—

## Valpo Motors, Inc.,

*Appellee (Defendant below)*

Argued: October 10, 2024 | Decided: May 13, 2025

Appeal from the Porter Superior Court
No. 64D01-2104-PL-3631
The Honorable Michael A. Fish, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 23A-PL-2391

**Opinion by Justice Goff**

Chief Justice Rush and Justices Massa, Slaughter, and Molter concur.

**Goff, Justice.**

Designed to promote high standards of business conduct, discourage unscrupulous dealing by sellers, and protect consumers against economic loss arising from defective goods, the implied warranty of merchantability is a "cornerstone of commercial law." Accordingly, state law requires any warranty disclaimer by the seller to be clear and conspicuous. And as an added layer of protection for those who invoke it, the federal Magnuson-Moss Warranty Act (or MMWA) provides consumers with a right of action to sue for damages and attorney's fees when the seller breaches the implied warranty.

The seller here, a used car dealer, expressly disclaimed all warranties in a written "buyers guide," selling the vehicle "as is." But given ambiguities in that document, we hold that the dealer did *not* effectively disclaim the implied warranty of merchantability. We further hold that, on the record here, fact issues remain as to whether the dealer had a reasonable opportunity to cure its failure to comply with its implied-warranty obligation. We thus vacate summary judgment for the dealer, direct the trial court to enter partial summary judgment for the buyer on the warranty-disclaimer issue, and remand for determination of whether the dealer had a reasonable opportunity to cure. Finally, should the buyer ultimately prevail in his action, we further direct the trial court to assess damages and reasonable attorney's fees to which he may be entitled.

# Facts and Procedural History

In late 2019, Bernadette O'Malley bought a used 2007 Dodge Caliber (the Car) from Valpo Motors, Inc. (or just Valpo). At the time of the sale, Valpo gave O'Malley two important documents: the Buyers Guide and the Sales Agreement. The Buyers Guide stated that the Car was being sold "AS IS" and that the "DEALER DOES NOT PROVIDE A WARRANTY FOR ANY REPAIRS AFTER SALE." App. Vol. 2, p. 105. The Sales Agreement incorporated the Buyers Guide by reference, expressly stating that information from the latter document "OVERRIDES ANY CONTRARY PROVISONS" in the former document. *Id.* at 73. The Sales

Agreement also disclaimed all express or implied warranties "UNLESS THE SELLER EXTENDS A WRITTEN WARRANTY OR SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT." *Id.* at 76.

The same day she bought the Car, O'Malley purchased a Service Contract. Though ultimately administered by and financed by third parties (Wynn's Extended Care, Inc. and Indiana Credit Acceptance Corp., respectively), the Service Contract reflects the signature of a Valpo representative as the "selling dealer." *Id.* at 78. At some point during the sale, a handwritten note was added to the Buyers Guide, stating, just under the "DEALER WARRANTY," that "Customer has purchased a 24/24,000 mile Wynn's warranty." *Id.* at 105.

About a month after the transaction, the Car broke down. O'Malley's son-in-law, Glenn Thomas, took the Car to a repair shop. But given the pervasiveness of mechanical issues affecting "almost every system" in the Car, only some of which were covered by the Service Contract, the shop concluded that the Car wasn't worth repairing. App. Vol. 3, pp. 126–27. After Valpo refused to arbitrate the matter, O'Malley sued for breach of implied warranty of merchantability under the MMWA.

Valpo moved for summary judgment, arguing (1) that the MMWA doesn't bar them from disclaiming warranties; (2) that O'Malley didn't give them a reasonable opportunity to repair the Car, as the MMWA requires; and (3) that the plain language of Valpo's warranty disclaimer bars O'Malley's claim. O'Malley argued in response (1) that, even if the Sales Agreement could be read to disclaim the implied warranty, the Service Contract into which the parties entered rendered the warranty disclaimer ineffective under the MMWA, entitling her to summary judgment; and (2) that evidence showing Valpo had an opportunity to cure its breach of the implied warranty entitled her to summary judgment or, at the very least, presented genuine issues of material fact to preclude summary judgment in Valpo's favor.

O'Malley died during the summary-judgment proceedings and Thomas substituted himself as plaintiff in his capacity as personal representative of

the estate. The trial court later granted summary judgment for Valpo without entering factual findings or conclusions.

The Court of Appeals affirmed, holding that the Buyers Guide, given its disclaimer of all warranties without exception, overrode any contrary suggestion of an exception in the Sales Agreement. *Thomas v. Valpo Motors, Inc.*, No. 23A-PL-2391, slip op. at 6 (Ind. Ct. App. May 2, 2024). In so holding, the panel rejected Thomas's argument that the hand-written notation on the Buyers Guide amounted to an admission that O'Malley's purchase of the Service Contract negated Valpo's warranty disclaimer. *Id.* at 6–7. The panel also found improper Thomas's reliance on *Universal Auto, LLC v. Murray*, which held that a dealer's facilitation of a third-party service contract for the buyer triggered an exception (like the one found in the Sales Agreement here) to the dealer's warranty disclaimer. *Id.* at 7 (citing 149 N.E.3d 639 (Ind. Ct. App. 2020)). Unlike here, the panel explained, nothing in *Universal* suggested that the sales documents in that case included an unequivocal warranty disclaimer or language indicating that the unequivocal warranty disclaimer controlled in the case of conflicts with other provisions. *Id.*

Judge Felix dissented. In his view, (1) the Sales Agreement disclaimer, with its specific terms, trumped the Buyers Guide disclaimer, with its more general terms; (2) even if the Buyers Guide controlled, it was ineffective under the MMWA; and (3) there was a genuine issue of material fact over whether Valpo had a reasonable opportunity to cure its breach of the implied warranty of merchantability. *Id.* at 9, 12.

Thomas petitioned for transfer, which we granted, vacating the Court of Appeals' decision. *See* Ind. Appellate Rule 58(A).

## Standard of Review

The interpretation of a contract is a question of law to which a de novo standard of review applies. *Land v. IU Credit Union*, 218 N.E.3d 1282, 1286 (Ind. 2023). The same standard applies to a trial court's summary-judgment ruling. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). On appeal from such a ruling, this Court draws all reasonable inferences in

the non-movant's favor and carefully assesses the trial court's decision to ensure that the non-movant was not improperly denied his day in court. *Id.* Summary judgment is "especially appropriate" in cases of contract interpretation "because the construction of a written contract is a question of law." *N.H. Ins. Co. v. Ind. Auto. Ins. Plan*, 176 N.E.3d 514, 521 (Ind. Ct. App. 2021).

# Discussion and Decision

"Unless excluded or modified," a warranty of merchantability for the sale of goods in Indiana "is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Ind. Code § 26-1-2-314(1) (internal citation omitted). Designed to "promote the highest possible standards of business conduct," the implied warranty of merchantability is a "cornerstone of commercial law" in dealings between sellers and consumers. Stephen E. Friedman, *Text and Circumstance: Warranty Disclaimers in a World of Rolling Contracts*, 46 Ariz. L. Rev. 677, 683–84 (2004) (internal citations and quotation marks omitted). So, to "protect the buyer from unfair surprise," the exclusion or modification of an implied warranty by the seller must be clear and conspicuous. *Hahn v. Ford Motor Co.*, 434 N.E.2d 943, 948 (Ind. Ct. App. 1982) (citing I.C. § 26-1-2-316(2)).

As a further layer of consumer protection, the MMWA permits a buyer to sue for "damages and other legal and equitable relief" when aggrieved "by the failure of a supplier, warrantor, or service contractor to comply with any obligation" imposed by the MMWA or any obligation "under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). Though it prescribes certain standards for written warranties, *see* 15 U.S.C. §§ 2302, 2304, the MMWA relies on "state law in defining the contours of implied warranties," *Hahn*, 434 N.E.2d at 952. Importantly, the MMWA expressly prohibits a consumer from bringing an action "for failure to comply with any obligation under any written or implied warranty or service contract" except when "the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply." 15 U.S.C. § 2310(e). But if this requirement

has been satisfied, and if the consumer "finally prevails" in the action, then he or she is entitled to damages and reasonable attorney's fees. 15 U.S.C. § 2310(d)(2).

Here, Thomas argues that Valpo "did not disclaim the implied warranty of merchantability" because the purported exclusion in the Sales Agreement expressly states that it does not apply if "THE SELLER EXTENDS A WRITTEN WARRANTY OR SERVICE CONTRACT WITH[IN] 90 DAYS FROM THE DATE OF THIS CONTRACT." Appellant's Br. at 9, 11 (quoting App. Vol. 2, p. 24) (alterations added). And even if the Sales Agreement could be read to exclude the implied warranty, he insists that the MMWA invalidates any such attempt because Valpo entered into a service contract with O'Malley. *Id.* at 11. Valpo rejects both these assertions and argues, as an independent basis for affirming summary judgment, that Thomas offered "no reasonable opportunity for [Valpo] to cure" the Car's purported defects, as the MMWA requires. Appellee's Br. at 10–11.

## I. As a matter of contract interpretation, Valpo did *not* effectively disclaim the implied warranty of merchantability.

We first address the question of whether, as a matter of contract interpretation, Valpo effectively disclaimed the implied warranty of merchantability. As noted above, a seller in Indiana may disclaim an implied warranty of merchantability by selling the goods "as is" or "with all faults" or by using other conspicuous terms that "call[s] the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." *Town & Country Ford, Inc. v. Busch*, 709 N.E.2d 1030, 1033 (Ind. Ct. App. 1999); *see* I.C. § 26-1-2-316(3)(a).

Thomas argues that the Sales Agreement "unambiguously provides that the purchaser receives the benefit of implied warranties if the 'seller extends a written warranty or service contract within 90 days'" of the date of the Sales Agreement. Appellant's Br. at 12–13. "Extends," Thomas submits, citing general dictionary definitions, simply means to "offer or

make available." *Id.* at 13. And the Sales Agreement here, he contends, "conclusively shows" that Valpo "made a service contract available to O'Malley because it shows that a service contract was sold to O'Malley as part of the sale of the [Car]." *Id.* at 13. For its part, Valpo argues that the clear and unambiguous "AS IS" language of the Buyers Guide controls, a proposition supported by the plain language of the Sales Agreement's conflict clause. Resp. to Pet. to Trans. at 4, 5.

When interpreting a contract, this Court reviews the document as a whole, seeking to determine the parties' intent while "making every attempt to construe the contract's language so as not to render any words, phrases, or terms ineffective or meaningless." *Performance Servs., Inc. v. Hanover Ins. Co.*, 85 N.E.3d 655, 659 (Ind. Ct. App. 2017). When the terms of a contract are clear and unambiguous, the Court "will apply the plain and ordinary meaning of the terms and enforce the contract according to its terms." *Id.* at 660. When, like here, a "written contract refers to another instrument and makes the terms and conditions of such other instrument a part of it, the two will be construed together as the agreement of the parties." *Id.* To the extent the contract reveals any ambiguities, those ambiguities are generally construed against the drafter. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006).

As noted above, the Buyers Guide stated that the Car was being sold "AS IS," with Valpo providing no "WARRANTY FOR ANY REPAIRS AFTER SALE." App. Vol. 2, p. 105. The Sales Agreement, on the other hand, disclaimed all warranties, express or implied, "UNLESS THE SELLER EXTENDS A WRITTEN WARRANTY OR SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT." *Id.* at 76. This variation between the two documents—disclaimer without exception under the Buyers Guide and disclaimer with certain exceptions under the Sales Agreement—triggers the Sales Agreement's conflict clause, rendering the terms of the Buyers Guide controlling. But whether language in the Buyers Guide sufficiently disclaims all warranties is another question.

The Buyers Guide (a copy of which we append to this opinion) lists three separate warranty options for the Car:

- "NO DEALER WARRANTY," with the car being sold "AS IS";

- A "DEALER WARRANTY," either "FULL" OR "LIMITED";

- Any "NON-DEALER WARRANTIES," whether from the "MANUFACTURER," a separate "SERVICE CONTRACT," or "OTHER."

*Id.* at 105. Among these options, the only box checked is the one adjacent to the "AS IS—NO DEALER WARRANTY" option. *Id.* However, this checkmark does *not* make the disclaimer clear and unambiguous. To the contrary, we find two things that inject ambiguity into the document. First, although the "SERVICE CONTRACT" option is left unchecked, the language accompanying that option expressly informs the buyer that such an option is "available for an extra charge" and that, if the buyer purchases a service contract "within 90 days" of buying a vehicle, "*implied warranties*" under the law "may give [the buyer] additional rights." *Id.* Second, directly under the "DEALER WARRANTY" option (the second option listed above), the Buyers Guide includes a hand-written notation stating that the "customer has purchased a 24/24,000 mile Wynn's warranty." *Id.*

Taken together, this information—the "implied warranties" that come with a service contract and the hand-written details of the "Wynn's warranty"—renders the Buyers Guide ambiguous. When a contract is ambiguous, we generally construe the ambiguity against the drafter. *MPACT Constr. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind. 2004). And because Valpo points to no extrinsic evidence for explaining this ambiguity, we can resolve it ourselves "without the aid of a factual determination." *See In re Ind. State Fair Litig.*, 49 N.E.3d 545, 548 (Ind. 2016) (explaining that the "meaning of a contract is a question for the factfinder, precluding summary judgment, only where interpreting an ambiguity requires extrinsic evidence").

To be sure, as the Court of Appeals' majority pointed out, the hand-written notation "does not mention the warranty-disclaimer exception in the Sales [Agreement], much less incorporate it." *Thomas*, No. 23A-PL-2391, slip op. at 7. But this observation overlooks other pertinent

information in the Buyers Guide—namely, the option to buy a service contract and the "implied warranties" that come with such a contract. *Cf. Performance Servs.*, 85 N.E.3d at 659 (courts review the "contract as a whole"). The "SERVICE CONTRACT" option need not have been checked for O'Malley to have been apprised of this information. In any case, the hand-written notation referring to the "Wynn's warranty" effectively did serve as a check to the "SERVICE CONTRACT" box.

For the reasons above, we hold as a matter of law that Valpo did not effectively disclaim the implied warranty of merchantability.[1]

## II. Fact issues remain as to whether Valpo had a reasonable opportunity to cure the defects.

The MMWA expressly prohibits a party from bringing an action "for failure to comply with any obligation under any written or implied warranty or service contract" except when "the person obligated under the warranty or service contract *is afforded a reasonable opportunity to cure* such failure to comply." 15 U.S.C. § 2310(e) (emphasis added).

Valpo argues that no such opportunity existed. Appellee's Br. at 25. An opportunity to "cure," Valpo contends, means an opportunity to "repair," which Valpo purportedly never had because O'Malley never attempted to make a claim for repairs. *Id.* at 25–26, 29. Valpo further insists that, under the MMWA, it was "entitled to at least two opportunities to remedy a nonconforming good," and Valpo never had a single opportunity because

---

[1] Because we conclude that the Buyers Guide itself failed to effectively disclaim the implied warranty of merchantability, we need not decide whether Valpo *entered into* the Service Contract with O'Malley, thus rendering Valpo's warranty disclaimer "ineffective" under the MMWA. *See* 15 U.S.C. §§ 2308(a), (c) (declaring "ineffective" a disclaimer of "any implied warranty to a consumer with respect to [a] consumer product" if "at the time of sale, or within 90 days thereafter," the supplier of goods "enters into a service contract with the consumer which applies to such consumer product").

it "was prohibited from picking up the vehicle and repairing it."[2] *Id.* at 28, 29.

The MMWA does not define "a reasonable opportunity to cure." And Indiana state courts have had no opportunity to squarely address the issue. So we turn to the pertinent statutory text and federal case law to guide our analysis.

To begin with, we reject Valpo's assertion that an opportunity to "cure" necessarily means an opportunity to "repair." As the U.S. District Court for the Northern District of Indiana has concluded, the term "cure" under the MMWA "denotes a process of restoration," which may include "repair, replacement or refund." *Gorman v. Saf-T-Mate, Inc.*, 513 F. Supp. 1028, 1034 (N.D. Ind. 1981). General dictionary definitions and even legal definitions align with this broad understanding of the term. *See Cure*, Webster's 3d New Int'l Dictionary 555, 556 (Philip Babcock Gove et al. eds., 2002) (defining "cure" as a procedure that "alleviates a troublesome or harmful situation" or as "any means of correction or relief" from an "evil condition"); *Sterling Mgmt.-Orchard Ridge Apartments v. State Bd. of Tax Comm'rs*, 730 N.E.2d 828, 834 n.2 (Ind. Tax Ct. 2000) (defining "cure," in "reference to legal issues," as an "act of correcting 'any defect or deficiency'") (quoting Bryan A. Garner, A Dictionary of Modern Legal Usage 163 (1987)).

As for whether Valpo was "entitled to at least two opportunities to remedy" the purported defects, we find some precedent to support their position. In *Mathews v. REV Recreation Group, Inc.*, the Seventh Circuit Court of Appeals concluded that "two chances [are] not a reasonable

---

[2] Valpo also faults O'Malley for failing to make a claim under the Service Contract, even though O'Malley "could have had *any* defects" to the Car repaired, including pre-existing defects, "so long as she was unaware of those defects at the time of sale." Appellee's Br. at 29 (emphasis added). But while covering repairs to "pre-existing damage" unknown to the buyer at the time of sale, the Service Contract expressly excludes coverage of "normal maintenance services and parts" and any breakdown caused by "rust or corrosion." App. Vol. 2, pp. 81, 88. And those issues identified by O'Malley's mechanic as not covered by the Service Contract encompassed damage from pre-existing "corrosion" and things "considered regular maintenance items." App. Vol. 3, p. 126.

opportunity to cure." 931 F.3d 619, 622 (7th Cir. 2019). And in *Zylstra v. DRV, LLC*, the Seventh Circuit relied on *Mathews* to reach the same conclusion, "at least in cases where the defects are somewhat minor, and not affecting full use of the vehicle." 8 F.4th 597, 603 (7th Cir. 2021).

Despite this precedent, we find several reasons to reject it as controlling here. First, *Mathews* and *Zylstra* both involved written warranties expressly requiring the buyers to give the manufacturer a reasonable opportunity to cure the alleged defect. *Mathews*, 931 F.3d at 620; *Zylstra*, 8 F.4th at 601–02. Under Indiana law, a buyer *must* give the seller a reasonable opportunity to cure "if the terms of the warranty impose that requirement." *Mathews*, 931 F.3d at 622 (quoting *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 783–84 (7th Cir. 2011) (quoting in turn *Aamco Transmission v. Air Sys., Inc.*, 459 N.E.2d 1215, 1217 (Ind. Ct. App. 1984))). But absent any such written requirement, "an opportunity to cure [is] *not* a condition precedent to the buyer's suit for breach of warranty." *Anderson*, 662 F.3d at 782 (quoting *Aamco*, 459 N.E.2d at 1217).[3]

---

[3] The court in *Zylstra* appears to have interpreted *Mathews* as expanding the opportunity-to-cure requirement to breach-of-implied-warranty claims. *See* 8 F.4th at 602 (concluding that, even in the absence of an express warranty requirement, *Mathews* "interpreted Indiana state law to require that the purchaser give the warrantor the opportunity to repair, and to do so more than two times"); *see also id.* at 609 (citing *Mathews* for the proposition that "just as with a claim for breach of an express warranty, a buyer must give the warrantor a reasonable opportunity to cure any alleged defect in order to make a claim of breach of an implied warranty"). But the court in *Mathews* reached its conclusion summarily while finding the plaintiffs there to have waived their argument that an opportunity to cure is not a condition precedent to a breach-of-implied-warranty claim. 931 F.3d at 623 & n.2. Even if *Mathews* did expand the opportunity-to-cure requirement, the state law on which it relied involved Indiana's Lemon Law. *Id.* at 622 (citing *General Motors Corp. v. Sheets*, 818 N.E.2d 49, 53 (Ind. Ct. App. 2004)). And Indiana's Lemon Law effectively amounts to a limited written warranty, expressly protecting consumers from a defect that "substantially impairs the use, market value, or safety of a motor vehicle" up to eighteen months or 18,000 miles (whichever comes first). Ind. Code §§ 24-5-13-6, -7. *See also* Harold Greenberg, *The Indiana Motor Vehicle Protection Act of 1988: The Real Thing for Sweetening the Lemon or Merely a Weak Artificial Sweetener?*, 22 Ind. L. Rev. 57, 62 (1989) (concluding that the "ultimate effect of the lemon law is to create a new, legislatively mandated, eighteen month/18,000 mile warranty against defects which substantially impair the use, value, or safety of automobiles").

Second, as Judge Felix pointed out, the "plain language of Section 2310(e)" contemplates only *one* reasonable opportunity to cure before a consumer may sue under the MMWA. *Thomas*, No. 23A-PL-2391, slip op. at 16. Section 2310 allows consumers to enforce limited written and implied warranties. *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004). For consumers suing for breach of a full written warranty, by contrast, section 2304(a) of the MMWA calls for refund or replacement of a defective product after "a reasonable number of [failed] *attempts* by the warrantor to remedy defects." 15 U.S.C. § 2304(a)(4) (emphasis added). *See Marchionna v. Ford Motor Co.*, No. 94 C 275, 1995 WL 476591, at *11 (N.D. Ill. Aug. 10, 1995) (observing that the "plurality of the word 'attempts'" under this section of the MMWA "indicates that [the manufacturer] was entitled to at least two, and possibly three, attempts to correct the defect"). In *Anderson*, a case involving a breach-of-limited-warranty claim, the federal district court relied on cases citing section 2304(a) to conclude that the plaintiffs had to give the manufacturer "at least two opportunities to cure." 662 F.3d at 780 n.3. The Seventh Circuit Court of Appeals considered this reliance improper, stressing the different standards governing limited and implied warranties (on the one hand) and full warranties (on the other hand) under the MMWA. *Id.*

Third, section 2310 speaks in the passive voice, permitting an action for breach of implied warranty only if the seller "*is afforded* a reasonable opportunity to cure." 15 U.S.C. § 2310(e) (emphasis added). In other words, the MMWA doesn't necessarily require the buyer to explicitly ask the seller to cure its failure to comply. Arguably, then, the seller's actual knowledge of its failure to comply—whether through its own pre-sale inspection efforts or mere notice of the defect from the buyer—may suffice to afford the seller a reasonable opportunity to cure. *See Radford v. Daimler Chrysler Corp.*, 168 F. Supp. 2d 751, 754 (N.D. Ohio 2001) (defendant's actual knowledge of the "alleged defect at the time of sale" may be sufficient notice for opportunity to cure under the MMWA); *Anderson*, 662 F.3d at 781, 782 (citing Indiana cases for the proposition that the purpose of the notice requirement under UCC section 714(1) "is, in significant part, to give the seller an opportunity to cure").

From this assessment of the pertinent statutory text and case law, we conclude that, in claims alleging breach of implied warranty, a buyer need only show to the satisfaction of the factfinder that the seller had "*a* reasonable opportunity to cure" its failure to comply with its warranty obligations. 15 U.S.C. § 2310(e) (emphasis added); *see Anderson*, 662 F.3d at 780 n.3 (suggesting that section 2310 contemplates only *one* reasonable opportunity to cure). And the buyer can meet this burden of proof by showing that he explicitly asked the seller to cure (*i.e.*, repair, replace, or refund) or that he notified the seller of the purported defect and the seller proposed no remedy in response.[4]

Here, the facts most favorable to Thomas show that he had notified Valpo of what he "had learned from the mechanic" and expressly gave them "an opportunity to rectify the situation" as they deemed "fit," and that Valpo itself made an offer to cure by offering a partial refund for the Car, which O'Malley rejected.[5] *See* App. Vol. 2, p. 202; App. Vol. 3, pp. 124–25. From this evidence, we hold that, at the very least, there's a genuine issue of material fact as to whether Valpo had *a* reasonable opportunity to cure its failure to comply with the implied warranty of merchantability, making summary judgment for Valpo improper.

## Conclusion

For the reasons above, we vacate summary judgment for Valpo, direct the trial court to enter partial summary judgment for Thomas on the warranty-disclaimer issue, and remand for determination of whether

---

[4] Given the parties' scant treatment of the question, we reserve for another day a decision on whether the seller's actual knowledge of its failure to comply with the implied warranty at the time of sale suffices to show that it had a reasonable opportunity to cure.

[5] Valpo contends that evidence of its offer of a partial refund amounts to "inadmissible settlement correspondence which is barred by Indiana Rule of Evidence 408." Appellee's Br. at 28. However, in its summary-judgment order, the trial court expressly denied Valpo's motion to strike this evidence. App. Vol. 2, p. 15. And even if that evidence is inadmissible, Thomas testified to having informed Valpo of the Car's condition and to giving them "an opportunity to rectify the situation." *Id.* at 202.

Valpo had a reasonable opportunity to cure. In the event Thomas "finally prevails" in his action, we further direct the trial court to assess damages and reasonable attorney's fees to which he may be entitled. *See* 15 U.S.C. § 2310(d)(2).

Rush, C.J., and Massa, Slaughter, and Molter, JJ., concur.

ATTORNEY FOR APPELLANT
Robert E. Duff
Indiana Consumer Law Group
Fishers, Indiana

ATTORNEY FOR APPELLEE
Andrew T. Shupp
Hoeppner Wagner & Evans, LLP
Valparaiso, Indiana

EXHIBIT 2 Filed: 5/12/2023 4:40 PM
Clerk
Porter County, Indiana

# BUYERS GUIDE

**IMPORTANT:** Spoken promises are difficult to enforce. Ask the dealer to put all promises in writing. Keep this form.

| DODGE | CALIBER | 2007 | 1B3HB48B57D301202 |
|---|---|---|---|
| VEHICLE MAKE | MODEL | YEAR | VEHICLE IDENTIFICATION NUMBER (VIN) |

## WARRANTIES FOR THIS VEHICLE:

## ☒ AS IS – NO DEALER WARRANTY

THE DEALER DOES NOT PROVIDE A WARRANTY FOR ANY REPAIRS AFTER SALE.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## ☐ DEALER WARRANTY

☐ FULL WARRANTY.

☐ LIMITED WARRANTY. The dealer will pay ___% of the labor and ___% of the parts for the covered systems that fail during the warranty period. Ask the dealer for a copy of the warranty, and for any documents that explain warranty coverage, exclusions, and the dealer's repair obligations. *Implied warranties* under your state's laws may give you additional rights.

**SYSTEMS COVERED:**                    **DURATION:**

*Customer has Purchased a 24/24,000 Mile Wynn's warranty.*

## NON-DEALER WARRANTIES FOR THIS VEHICLE:

☐ MANUFACTURER'S WARRANTY STILL APPLIES. The manufacturer's original warranty has not expired on some components of the vehicle.

☐ MANUFACTURER'S USED VEHICLE WARRANTY APPLIES.

☐ OTHER USED VEHICLE WARRANTY APPLIES.

Ask the dealer for a copy of the warranty document and an explanation of warranty coverage, exclusions, and repair obligations.

☐ SERVICE CONTRACT. A service contract on this vehicle is available for an extra charge. Ask for details about coverage, deductible, price, and exclusions. If you buy a service contract within 90 days of your purchase of this vehicle, *implied warranties* under your state's laws may give you additional rights.

ASK THE DEALER IF YOUR MECHANIC CAN INSPECT THE VEHICLE ON OR OFF THE LOT.

OBTAIN A VEHICLE HISTORY REPORT AND CHECK FOR OPEN SAFETY RECALLS. For information on how to obtain a vehicle history report, visit ftc.gov/usedcars. To check for open safety recalls, visit safercar.gov. You will need the vehicle identification number (VIN) shown above to make the best use of the resources on these sites.

SEE OTHER SIDE for important additional information, including a list of major defects that may occur in used motor vehicles.

Si el concesionario gestiona la venta en español, pídale una copia de la Guía del Comprador en español.

Def's Ex F
Witness O'Malley
Date 4-2023 KM

105